[Crim. No. 2912. Fourth Dist., Div. One. Feb. 23, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. MILTON JAMES RICE, Defendant and Appellant.

George Benedict, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Bechefsky, Deputy Attorney General, for Plaintiff and Respondent.

WHELAN, J.—Shortly after midnight in the early hours of December 14, 1966, Officer Smith of the San Diego police,

in uniform and alone in a marked police car, saw defendant, who was then 19 years of age, standing on the sidewalk at the southeast corner of the intersection of Lamont and Garnet Streets in the Pacific Beach area of San Diego; defendant appeared to be trying to hitch a ride.

The area was one in which there were many business houses which were closed, and also was an area in which currently there had been unsolved burglaries, the reports of which had come to Smith's attention. There was no pedestrian traffic and very little vehicular traffic at that time and place.

Smith thought that possibly defendant might have been responsible for one or more of the burglaries, although he had no information connecting defendant with them.

After stopping his car and alighting, Smith approached defendant and asked him what he was doing in the area at that time of the morning; was told defendant had been visiting a friend in the area and was returning home; asked defendant for identification, which was given satisfactorily and which disclosed defendant's home as in East San Diego, a district miles distant from Pacific Beach; noticed that the pockets of the windbreaker jacket worn by defendant were bulging; thought defendant might have a weapon in one of the pockets; asked defendant if he might search defendant to check for weapons; was told defendant would rather not have Smith search him; told defendant that to protect himself Smith had the right to search defendant for weapons, that what defendant had in his jacket pockets might be a gun; was finally told to go ahead; reached into the left jacket pocket which had the larger bulge and from which he drew out a transistor radio; reached into the right jacket pocket and found a cylindrical plastic bottle $2\frac{3}{4}$ inches long, 1-7/16 inches in diameter with a cap $1\frac{3}{4}$ inches in diameter; the minute he found it he pulled it out, looked at it, asked defendant what it was, was told, "You know what that is"; and found a cloth hat in the same pocket.

Through the transparent plastic of the bottle were seen green flaky material and seeds that proved to be marijuana.

The case, by stipulation of the parties, was tried upon the transcript of the evidence produced at the preliminary hearing, the defendant personally agreeing to that procedure in answer to detailed questioning by the trial judge.

Defendant had testified at the preliminary hearing; said he had been hitchhiking, had eventually consented to the search after first objecting and after Smith said he had the right to

search, had been asked by Smith if the latter might search defendant, had asked why, had been told because Smith thought he was carrying a weapon.

## LEGALITY OF THE SEARCH

The legality of the search made by Smith possibly rests on either of two premises: that it was a search for weapons of the kind recognized as proper in *People* v. *Mickelson,* 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658], and in other cases that we discuss below, or that a voluntary consent to search was given by defendant.

In *People* v. *Garrett,* 238 Cal.App.2d 324 [47 Cal.Rptr. 731], a "pat down" of appellant's person was made which disclosed a pocket knife and what felt like and was a large amount of coins; it was only after feeling those objects from outside defendant's clothing that anything was removed from his pockets.

In *People* v. *Randal,* 226 Cal.App.2d 105, 108 [37 Cal.Rptr. 809], there was a "pat down," which seemed to have given no occasion for a further search of defendant's person.

In *People* v. *Koelzer,* 222 Cal.App.2d 20 [34 Cal.Rptr. 718], the method employed in searching for weapons was not described; there was removed from defendants' persons a pair of wire-cutting pliers, among other things.

In *People* v. *Jones,* 176 Cal.App.2d 265 [1 Cal.Rptr. 210], the officer, in running his hands over defendant's outer garments, felt what was discovered to be an automatic pistol.

In *People* v. *McGlory,* 226 Cal.App.2d 762, 764 [38 Cal. Rptr. 373], a search for weapons was begun before one of the persons to be searched voluntarily produced contraband that caused a visible bulge between her breasts.

There is dictum in the majority opinion in *People* v. *Henze,* 253 Cal.App.2d 986 [61 Cal.Rptr. 545], that suggests the kind of justified search mentioned in *People* v. *Mickelson, supra,* 59 Cal.2d 448, may be undertaken by going directly into the pockets of the person being questioned. We do not agree with that suggestion.

In the case at bench no attempt was made by Smith to "pat down" the defendant. Accordingly, Smith did not feel anything of the shape and structure of a weapon as the result of such a superficial search. He did observe that both of defendant's jacket pockets were bulging. The fact that a person carries something in his pocket that causes the pocket to bulge visibly would not, of itself, justify an officer in going

into the pocket and removing the bulging object; there would have to be something more: the outline visually apparent or felt of a weapon or something reasonably believed to be identified as contraband discoverable by the exterior observation or feeling. No doubt a further search might also be made if olfaction should detect the presence of contraband, the smell of which emanated from the clothing of a defendant.[1]

Here, the search actually made was not based upon facts discovered as the result of a superficial search for weapons; while the officer's curiosity was no doubt aroused by the bulging pockets of defendant, he did not attempt to satisfy that curiosity by asking defendant what he had in his pockets, nor by feel to ascertain the shape and consistency of the contents of the pockets.

In *People* v. *Martines,* 228 Cal.App.2d 245 [39 Cal.Rptr. 526], an officer made a superficial search of the outside of the defendant's clothing and felt a hard object like a knife; he could not feel a blade; the object was about three inches long; the officer then put his hand in the pocket and pulled out what felt like a wad of paper consisting of nine marijuana cigarettes; the knife was then removed. That was held to be an illegal search.

Since the search in the present case exceeded the superficial weapons search allowed when there is neither search warrant nor arrest warrant nor probable cause for arrest, and since there was no evidence from the senses of the presence of a weapon or contraband, the search must be justified if at all by the defendant's consent.

### Scope of the Search Consented to

It is clear that defendant gave expression of consent to some search of his person; it is equally clear that the consent resulted from Smith's assertion of a right to search defendant for weapons. Only the committing magistrate saw and heard the officer testify. In passing upon the questions whether the officer had a good faith belief that defendant might be armed, and whether the circumstances justified a search for weapons, the magistrate reached affirmative answers. The trial court made the same determinations, from which we are not disposed to differ. It is clear, therefore, that

---

[1] It is possible at least in theory that by feeling through clothing or by smell there could be probable cause to believe that a crime was being committed in the presence of the officer by the possession of contraband other than an illegal weapon, or probable cause to believe the defendant had on his person the fruits or tools of a felony known to the officer to have been committed.

the officer's assertion of a right under the circumstances to make a weapons search was not an illegal assertion of authority.

■ However, in that situation, where the defendant had expressed a wish not to be searched, and then consented to a search because of the officer's assertion of a right to search for weapons, the scope of the search consented to must be limited to the scope of the right of search asserted, unless it should clearly appear that free and voluntary consent was given to a general and exploratory search. It does not clearly appear here that the consent given was of that character. Since the search was not the kind of weapons search the right to make which was asserted by the officer, it was not a reasonable search, and the evidence obtained by it was inadmissible.

In the following cases there were considered questions of the reality of consent, of the credibility of witnesses as to the giving of consent, and as to consent given because of an unlawful assertion of authority: *People* v. *McKinney,* 219 Cal.App.2d 120, 123 [32 Cal.Rptr. 562]; *People* v. *White,* 218 Cal.App.2d 267 [32 Cal.Rptr. 322]; *People* v. *Faulkner,* 166 Cal.App.2d 446 [333 P.2d 251]. Those cases all dealt with the searches of the person.

In *People* v. *Hickens,* 165 Cal.App.2d 364, 368 [331 P.2d 796], it is stated that the extent of the consent is a question of fact for the trial court, just as the voluntary nature of the consent is such a question.

*People* v. *Gorg,* 45 Cal.2d 776, 782-783 [291 P.2d 469], cited in support of that proposition, states: "When the People seek to justify a search on the ground that consent thereto was given, they have the burden of proving consent. . . .

"Defendant was living in the Stevens home, and it is clear that whether he was in fact a tenant, servant, or guest, Stevens believed that he had at least joint control over his quarters and the right to enter them, put them at the disposal of defendant's father, and authorize a search thereof. Under these circumstances the officers were justified in concluding that Stevens had the authority over his home that he purported to have, and there was nothing unreasonable in their acting accordingly."

The only evidence here to support an inference that the officer believed defendant's consent was to an unlimited search is the fact that Smith engaged in such a search.

On all the evidence presented, it must be held as a matter of

law that it could not reasonably be believed that the defendant's consent extended so far.

Judgment reversed.

Brown (Gerald), P. J., and Coughlin, J., concurred.