[Crim. No. 16633. Second Dist., Div. Three. Apr. 22, 1970.]

THE PEOPLE, Plaintiff and Appellant, v.
ALEXANDER WOODS, Defendant and Respondent.

## Counsel

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Joel Paul Hoffman, Deputy District Attorneys, for Plaintiff and Appellant.

Taft, Ackerman & Marks and Frederic G. Marks for Defendant and Respondent.

## Opinion

**COBEY, Acting P. J.**—Pursuant to Penal Code section 1238, subdivision 1 the People appeal from an order granting defendant's motion under Penal Code section 995 to set aside an information charging defendant with possession of marijuana (Health & Saf. Code, § 11530) on the ground that the police obtained the marijuana by an unconstitutional seizure and search. The People contend that the marijuana either was in plain view or was discovered by a reasonable seizure and search.

We reverse. We believe that under the circumstances of this case the police had a constitutionally adequate basis to make a nonconsensual stop of defendant, to forcibly withdraw his hand from his pocket to see whether it held a weapon and to illuminate the interior of that pocket with a flashlight to see why he did not wish to tell the police what was in the pocket.

In short we hold that the marijuana within the pocket was not discovered by the police by means of an unconstitutional seizure and search of the defendant.

## THE FACTS

About 9:40 p.m., on January 25, 1969, Police Officer Convey and his partner received "a shots fired report" with instructions "to see the woman at 11923 Saltair Terrace." At that address a woman and three other people informed the officers that they had heard the sound of what seemed to be shots being fired and that this sound had come from the intersection of Saltair Terrace and Saltair Avenue.

The two officers went to the intersection and started checking each of the houses on the intersection to see whether anyone there had heard the shots. Three people there apparently had.[1] Just after 10 p.m. the officers on foot, observed defendant, apparently a complete stranger to the officers, walking toward the intersection. He was about 100 feet south of it. Convey approached defendant from the front and his partner approached him from the rear. Convey saw that defendant's left hand was concealed in a jacket pocket. Because of the nature of the investigation, on approaching defendant Convey placed his right hand on defendant's left hand which was still in the pocket and asked defendant what he had in the pocket. Defendant became nervous and would not answer the question. Convey reached into the pocket, placed his hand over defendant's knuckles, and pulled defendant's hand out to discover whether defendant was holding a pistol. Defendant's hand was empty.

At this point Convey, without spreading the pocket or pulling it open, shined his flashlight into the pocket and discovered therein a clear plastic bag containing a green, leafy substance that looked like marijuana. Convey removed the bag from defendant's pocket and arrested defendant for possession of marijuana.

Subsequently the substance in the bag was established to be approximately 21 grams of marijuana.

### THE CONSTITUTIONALITY OF THE SEIZURE AND SEARCH

■ This case presents a close and difficult question of accommodation between the Fourth Amendment rights of an individual against unreasonable seizures and searches of his person, on the one hand, and the urgent need of society in these troubled times, on the other, for prompt and effective

---

[1] The officer's testimony on this point is not completely clear as to whether at the intersection he obtained new confirmation of the shots being fired or whether the only confirmation he received was that which he had obtained earlier.

police detection of crime. Crime in the streets—particularly that occurring during the hours of darkness—is a matter of nation-wide concern. Yet, it is established that the protection of the Fourth Amendment of the United States Constitution and presumably its counterpart in the California Constitution (art. I, § 19), extends to the person of an individual on city streets—to his reasonable expectation of privacy of his person there and to his right there to be free from unreasonable governmental intrusions into that privacy. (See *Terry* v. *Ohio,* 392 U.S. 1, 8-9, 16 [20 L.Ed.2d 889, 898-899, 903, 88 S.Ct. 1868].) As the United States Supreme Court said in the companion case to *Terry, Sibron* v. *New York,* 392 U.S. 40, 64 {20 L.Ed.2d 917, 935, 88 S.Ct. 1889], "The police officer is not entitled to seize and search every person whom he sees on the street . . . . Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so." (Cf. *People* v. *Simon,* 45 Cal.2d 645, 650-651 [290 P.2d 531].)

Therefore, the momentary nonconsensual detention of a person by the police on our city streets for the purpose of investigating that person's possible connection with some suspected criminal activity must be based upon something more than a good faith hunch of the police. To be justified under the Fourth Amendment the officer, as an expert in the prevention and detection of crime, must be able to point to articulable specific facts, together with rational inferences from those facts, which, when viewed objectively and in the total circumstances of the situation, make the intrusion a reasonable one. (See *Terry, supra,* at pp. 21-22, 30 [20 L.Ed.2d at pp. 905-906, 911].)

■ Such a condition of specifically based, reasonable suspicion of an individual on the part of a police officer, as a reasonably minded expert in the prevention and detection of crime, exists when (1) some unusual activity is occurring, has occurred or seems about to occur, (2) something reasonably connects the person under suspicion with that activity, and (3) something reasonably suggests that the unusual activity is related to crime.[2] (See *People* v. *Henze,* 253 Cal.App.2d 986, 988 [61 Cal.Rptr. 545], hg. den.; *People* v. *Manis,* 268 Cal.App.2d 653, 658-659 [74 Cal.Rptr. 423], hg. den.)

---

[2]This condition should not be confused with the more limited one decribed in Penal Code section 647, subdivision (e), which reads as follows:

"Who loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer so to do, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification."

This limited stop and frisk statute was held constitutional in *People* v. *Weger,* 251 Cal.App.2d 584 [59 Cal.Rptr. 661], cert. den. 389 U.S. 1047 [19 L.Ed.2d 840, 88 S.Ct. 774].

In applying the *Henze* test, consideration must be given as well to the necessity for immediate action by the police, such as that which exists when the mission of the police is to prevent rather than to detect a crime or to effect an immediate rescue or protection of an actual or potential victim of crime. This was perhaps the basic difference between the situations in *Terry* and *Sibron*. In addition, common sense dictates that the seriousness of the offense under investigation must also be taken into account in balancing the opposing interests of the individual and society. In sum, what the Fourth Amendment essentially requires for a constitutional involuntary stop by the police for investigative purposes of an individual seems to be a reasonable possibility that each of the three conditions specified in *Henze* exists. (See LaFave, *"Street Encounters" and the Constitution* (1968) 67 Mich.L.Rev. 40, 57-58, 65-66, 75.)

■ Applying the *Henze* test, as reworded by us, to the facts before us, we hold that Police Officer Convey did have a sufficiently articulable rational suspicion of defendant to justify constitutionally his stopping defendant. Convey and his partner were engaged about 10 p.m. in the investigation of "a shots fired report." They had partially confirmed the accuracy of this report by the time they saw defendant, apparently a complete stranger to them, walking at night in a residential area, with one of his hands in a jacket pocket, on a street in the immediate vicinity of the exact location they were investigating and some 20 minutes or so following their receipt of the report.

The happenstance of defendant's being there under these circumstances, taken together, justified the police in making a nonconsensual stop of defendant to see whether he was in any way connected with the activity they were investigating. (See *People* v. *Cruppi*, 265 Cal.App.2d 9, 11-12 [71 Cal.Rptr. 42], hg. den., and cases cited therein; *People* v. *Henze, supra*, 253 Cal.App.2d 986, 988-989, hg. den.; cf. *People* v. *Collins*, 1 Cal.3d 658, 660-661 [83 Cal.Rptr. 179, 463 P.2d 403]; *People* v. *Caylor, ante*, pp. 51, 57 [85 Cal.Rptr. 497]; *People* v. *Bruno*, 211 Cal.App.2d Supp. 855, 862-863 [27 Cal.Rptr. 458]; cf. *People* v. *Gamboa*, 235 Cal. App.2d 444, 448 [45 Cal.Rptr. 393], hg. den.)

We do not believe that the narcotics cases, namely, *Sibron, supra, Irwin* v. *Superior Court*, 1 Cal.3d 423, 425-428 [82 Cal.Rptr. 484, 462 P.2d 12], *People* v. *Moore*, 69 Cal.2d 674, 682-683 [72 Cal.Rptr. 800, 446 P.2d 800], and *People* v. *One 1960 Cadillac Coupe*, 62 Cal.2d 92, 96 [41 Cal. Rptr. 290, 396 P.2d 706], principally relied on by defendant, compel a different conclusion. *Sibron* and *Irwin* were essentially search rather than seizure cases. Moreover, the same necessity for immediate action by the

police at night following partial confirmation of the use of firearms in an urban area did not exist in those cases.[3]

■ This brings us to the question of whether Officer Convey, after stopping defendant, was constitutionally privileged to ascertain whether he had a weapon in the hand he had concealed in a jacket pocket by forcibly withdrawing that hand instead of by conducting a superficial exterior pat-down search of defendant's person, including the hand in question. We have found no authority upon this very narrow point, but as a matter of common sense we believe that he was. Officer Convey's immediate concern was the concealed hand and we think that he acted reasonably in relieving his concern at once in the manner in which he did.

■ The final question presented is whether the subsequent discovery of the marijuana inside the jacket pocket involved an unconstitutional search. We do not believe that it did. Officer Convey was on a public street where he was entitled to be. He illuminated the interior of defendant's pocket with his flashlight without in any way otherwise improving his view. (See *People* v. *Superior Court* (*Mata*) 3 Cal.App.3d 636, 639 [84 Cal. Rptr. 81]; *People* v. *Boone,* 2 Cal.App.3d 66, 69-70 [82 Cal.Rptr. 398], and cases cited therein; cf. *People* v. *Hobbs,* 274 Cal.App.2d 402, 406-407 [79 Cal.Rptr. 281], hg. den.) We do not regard this conduct on the officer's part as being equivalent to his reaching into the pocket and forcibly withdrawing therefrom the clear plastic bag of marijuana. This he could not have constitutionally done. (See *People* v. *Collins, supra,* 1 Cal.3d 658, 661-663; *People* v. *Rice,* 259 Cal.App.2d 399, 401-402 [66 Cal.Rptr. 246].)

The order setting aside the information is reversed.

Schweitzer, J., and Allport, J., concurred.

A petition for a rehearing was denied May 11, 1970, and respondent's petition for a hearing by the Supreme Court was denied June 17, 1970. Sullivan, J., was of the opinion that the petition should be granted.

---

[3]We note that the police in this case did not first attempt a consensual stop of defendant. But we are not prepared to hold that, as a matter of law under the circumstances existing in this case, they were constitutionally required to do so.