[Crim. No. 18305. Second Dist., Div. Five. Dec. 2, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY DEVON ATMORE, Defendant and Appellant.

## COUNSEL

Richard S. Buckley, Public Defender, James L. McCormick, Richard S. Fiore and Leighton A. Nugent, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

KAUS, P. J.—After a court trial, the defendant was found guilty of a violation of section 11530 of the Health and Safety Code. Proceedings were suspended and he was placed on probation for a period of three years. He appeals from the judgment and from an order denying a motion for a new trial. The latter appeal must be dismissed.

Defendant's only point on appeal is that a marijuana cigarette, which was the basis of his conviction, was seized in violation of his Fourth Amendment rights.

### FACTS

On October 28, 1969, at 12:45 a.m. Officer Carrillo received a broadcast that a "187 P.C." (murder) had just been committed at Normandy and

61st Street in Los Angeles. The suspect was described as a male Negro, 5'10", slimly built, about 18 to 20 years in age, and wearing a dark jacket. The murder weapon was said to have been a shotgun. Carrillo started to look for a suspect in the general area of 61st Street and Normandy. He saw defendant walking westbound at 1435 West 60th Street, which was about two blocks from that intersection. Defendant was walking in a direction away from that intersection. Defendant answered the description Carrillo had heard on his radio. He was wearing a dark jacket.

Carrillo started to conduct a "cursory search" for offensive weapons. Just after he started the search around defendant's waistband, defendant abruptly grabbed for his outside upper jacket pocket. Carrillo moved defendant's hand away from the pocket. From the outside he felt a round cylindrical object which he thought was a 12-gauge shotgun shell. He reached into the pocket to remove it and at the same time pulled out a marijuana cigarette. The cylindrical object turned out to be a lipstick container.

According to the officer a shotgun firing 12-gauge shells would be roughly 20 inches long. At the time when he reached into the pocket, he was unable to observe whether defendant was in possession of a gun because he was wearing a jacket.

Defendant claims that the police had no right to stop him. He points to *People* v. *Collins,* 1 Cal.3d 658, 660 [83 Cal.Rptr. 179, 463 P.2d 403], where on arguably similar facts, the Supreme Court expressed a grave doubt concerning the lawfulness of the particular detention involved in that case. There the officers, several days before the detention of Collins, had been informed that a grand theft auto suspect, described as a male Negro, 6' tall and weighing 160 pounds might be found in an area centered a block from the location where the officers observed Collins.

This case differs from *Collins* in several particulars. First, the description which Officer Carrillo had was considerably more detailed. He was informed of the approximate age of the suspect and of the fact that he was supposed to be wearing a dark jacket. More important, perhaps, the murder mentioned in the broadcast had evidently just been committed and defendant was walking away from the scene of its commission. Obviously, under such circumstances the mathematical possibility that a person answering the description of a suspect might actually be the suspect is greater than it is when such a person is found in an area where a crime has been committed several days earlier. Defendant's initial detention was amply justified.

Defendant's brief apparently concedes that if the detention was proper,

Officer Carrillo was entitled to pat him down for weapons.[1] What he does claim, again relying on *People* v. *Collins, supra,* is that the officer was not entitled to reach into his pocket to pull out the object which he believed to be a shotgun shell.[2] The main thrust of defendant's argument is that *Collins,* relying, of course, on *Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], limits a physical intrusion into a suspect's pockets to situations where the pat-down reveals "specific and articulable facts reasonably supporting" a suspicion that a weapon has been located. Defendant then argues that a shotgun shell, without a shotgun, is not a weapon.

The parties are at odds on the question whether a shotgun shell alone can be used as a weapon. We think the controversy is beside the point. It must be remembered that the officer's grab for the contents of the pocket occurred at the very outset of the pat-down. Though there is some confusion in the record, it is susceptible of the inference that at the moment the officer had not yet eliminated the possibility that defendant was hiding a relatively short shotgun under his jacket.[3] In any event a shotgun was not necessarily the only object which, in combination with a shell, could be used as a weapon. The officer could reasonably believe that any sharp object could be used as a detonator. He had not eliminated the possibility that defendant might be the person who was sought for murder and who, if caught, could face the death penalty. If he was the murder suspect, he might want to explode the shell even in a way which might entail considerable personal risk to himself, so long as he might escape in the ensuing confusion.

We realize that when the officer reached into the pocket he had not yet ascertained that defendant was, indeed, in possession of a detonating device. Hindsight may suggest that, in order to combine maximum personal safety for the officer with a minimum invasion of defendant's privacy, the

---

[1] "Officer Carrillo testified that as he approached appellant he conducted a cursory search for offensive weapons. In view of the fact, the officers were investigating a homicide a so-called 'pat-down' or cursory search for offensive weapons which might be used against the officers might have been justified but Officer Carrillo reaching into the pocket of appellant and removing objects therein is another matter entirely."

[2] Defendant attacks the trial court's express and implied finding of fact that Officer Carrillo sincerely believed that the cylindrical object he felt was a shotgun shell. We have no difficulty in finding that a reasonable trier of fact could find in favor of the People on this issue. It is essentially a matter of credibility.

[3] The testimony on the point is as follows: "Q. How big is the gun that is used? A. Overall use? A. Right. A. Approximately 20 inches, I would say roughly. Q. If a person were to try to conceal a 20 inch shotgun on his person, it would be readily visible upon observation? A. Yes, sir. Q. Now, Officer, when you started your search to the defendant's waistband, you didn't observe a shotgun, did you? A. No, sir. Q. In fact, you didn't observe any gun, did you? A. I couldn't. He had a jacket on."

officer should first have ascertained what else defendant was carrying. We do not believe, however, that under the circumstances the officer was required to proceed in the coldly logical sequence which may suggest itself after the event. It appears from the record that his reaching into the pocket was almost a reflexive motion, provoked by defendant's sudden gesture toward the pocket and his own feeling of the contents.[4] We cannot say that under all of the circumstances defendant's constitutional rights were violated.

Defendant complains that Officer Carrillo did not, as a witness, sufficiently articulate that the reason why he reached for the object in defendant's pocket was self-protection. As noted, he testified, that he had started a "cursory search" to find out whether defendant had "any offensive weapons." Nothing in the record necessarily suggests that his purpose had changed when he reached into defendant's pocket or that he was really looking for evidence to connect defendant with the murder.

Finally defendant makes the point that even if the officer was entitled to remove the cylindrical object from his pocket, he was not privileged to take the marijuana as well.

There is no compelling evidence that Officer Carrillo consciously seized the cigarette. A legitimate implication from the record is that his hand emerged with more than he intended to remove from the pocket.[5] We have all done the same thing when fumbling for keys or coins. There is nothing sinister about it. Once the cigarette was in plain sight, the officer did not have to ignore it. (Cf. *Skelton* v. *Superior Court,* 1 Cal.3d 144, 157-158 [81 Cal.Rptr. 613, 460 P.2d 485].)

The judgment is affirmed. The appeal from the order denying a new trial is dismissed.

Aiso, J., and Reppy, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 28, 1971.

---

[4]The shotgun shell was, of course, not a "soft object" such as the lid of marijuana in *People* v. *Collins, supra,* the paper-wrapped heroin in *People* v. *Armenta,* 268 Cal. App.2d 248 [73 Cal.Rptr. 819], the four packages of marijuana in *Byrd* v. *Superior Court,* 268 Cal.App.2d 495 [73 Cal.Rptr. 880] or the three plastic bags containing marijuana seized in *People* v. *Britton,* 264 Cal.App.2d 711 [70 Cal.Rptr. 586].

[5]"Q. Now, when you felt in this person's pocket that hard object, was it at this time that you considered it to be a shotgun shell? A. Yes, sir. Q. And you pulled it out? A. I did, sir. Q. And, then, you never went back into the pocket again? A. I took everything out at the time. Q. You took everything out? A. Yes. Q. And you took the hand-rolled cigarette out of the pocket? A. At the same time I grabbed this, both objects came out. Q. Did you feel the hand-rolled cigarette at the time your hand went in the pocket? A. I felt something come along with the tube. Q. You felt something come along, so your fingers were on that cigarette when you lifted the tube out? A. They both came out together. Q. By your pulling them out, correct? A. Yes. I took them out of his pocket."