[Crim. No. 23500. Second Dist., Div. One. Dec. 3, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
ROY DEAN WIGGINTON, Defendant and Appellant.

## COUNSEL

Farhad Kazemzadeh, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, and Russell Iungerich, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**LILLIE, J.**—Following denial of a pretrial motion to suppress (§ 1538.5, Pen. Code), a jury found defendant guilty of a violation of the Dangerous Weapons Control Law (§ 12021, Pen. Code), and to be true allegations of two prior felony convictions—escape from prison (§ 4530, Pen. Code) and possession of heroin (§ 11500, Health & Saf. Code). He appeals from the judgment (order granting probation).

The sole issue is the admissibility of a revolver taken from the person of defendant. The following was offered on the motion.

Around 5 p.m. Officer Cook (in plain clothes) and one Randolph drove to a residence to purchase some "spoon quantities of heroin"; Randolph entered while he waited in the car in front; for 15 minutes he watched six persons separately enter and leave the residence; Randolph returned, said he "was sticking" and showed him a balloon and a paper bindle; by prearrangement they were stopped by several police cars, Randolph was arrested and the heroin was seized.

At 7:30 p.m. Cook and three other officers returned to the residence for further investigation; Cook watched the back door while the officers knocked on the front door and shouted "Police Officers"; a man carrying a plastic laundry basket came out of the back door, and he ordered him to halt; the man dropped the basket, and a metal box containing narcotics fell out; four males in the residence were arrested and one was detained. In the living room Officer Ainsworth guarded the suspects, one of whom was not handcuffed, and with permission of a Mr. Tyler, one of the occupants and also under arrest, the other two officers searched the house finding a .32 revolver, bowie knife and narcotics; Officer Cook then accompanied Tyler, who was not handcuffed, to the garage where more narcotics were found.

As Officer Cook and Tyler walked up the driveway to the front of the house defendant and one Avery approached them; defendant said to them, "What's the matter with you? The man is across the street"; "the man" referred to sheriff's deputies investigating an accident nearby; Officer Cook pulled out his gun and badge and ordered the two to raise their hands; Avery complied but defendant did not; he again ordered defendant to raise his hands but he still did not comply, turned his back and walked toward the front of the house; Officer Ainsworth, in the living room guarding the five suspects, heard the orders and fearing Cook might need help stepped to the doorway leading to the porch and saw defendant with his back to Cook walk toward him; a third time Officer Cook ordered defendant to raise his hands but defendant failed to comply; Ainsworth saw defendant's left hand above his shoulder but his right hand remain lower than his left near the right pocket of his jacket; Officer Cook observed defendant make a movement with his right arm from his mid-section toward the right side of his body, whereupon he tapped him on the side of the head with his gun and tried to force his hands above his head; "instantaneously," and by "instinct" Officer Ainsworth reached directly into defendant's right coat pocket and pulled out a revolver, guided defendant into the room and arrested him.

On his challenge to the admissibility of the revolver appellant argues that there was no probable cause to detain him because Officer Cook originally unlawfully detained him on the "mere suspicion that [he] was dangerous," thus there was no justification for the second and third commands to raise his arms.

Defendant was not detained on suspicion that he was dangerous; to the contrary, the record shows that Officer Cook sought to detain him for investigation and identification because he had a reasonable suspicion that he had come to the premises for the purpose of buying heroin. In *Terry* v. *Ohio,* 392 U.S. 1, 22 [20 L.Ed.2d 889, 906-907, 88 S.Ct. 1868], the United States Supreme Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest," and temporarily detain him therefor. (*Adams* v. *Williams,* 407 U.S. 143, 145-146 [32 L.Ed.2d 612, 616-617, 92 S.Ct. 1921]; *People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal. Rptr. 18, 380 P.2d 658]; *People* v. *Griffith,* 19 Cal.App.3d 948, 950 [97 Cal.Rptr. 367].) However, "before such a detention may be undertaken there must be an objectively reasonable suspicion that something out of the ordinary has taken place, that the activity is related to a crime, and that defendant is connected to the activity. (*Irwin* v. *Superior Court,* 1 Cal.

3d 423 427 [82 Cal.Rptr. 484, 462 P.2d 12]; *People* v. *Henze,* 253 Cal. App.2d 986, 988 [61 Cal.Rptr. 545].)" (*People* v. *Griffith,* 19 Cal.App. 3d 948, 950 [97 Cal.Rptr. 367]; *People* v. *Adam,* 1 Cal.App.3d 486, 489 [81 Cal.Rptr. 738]); and "he must be able to point to specific and articulable facts from which he concluded that his action was necessary. [Citation.]" (*People* v. *Block,* 6 Cal.3d 239, 244 [103 Cal.Rptr. 281, 499 P.2d 961].)

The following facts were known to Officer Cook at the time he first ordered defendant to raise his hands: (1) that narcotics were being sold at the premises—around 5 p.m. he had seen Randolph enter the residence and return with a balloon and a bindle of heroin; during the 15 minutes he waited for him he saw six persons separately enter and leave the residence, and under the circumstances it was reasonable for one of Officer Cook's experience to conclude that at least some of those persons entered to buy narcotics; several hours later upon approach of the officers an occupant fled out of the rear of the residence with narcotics concealed in a laundry basket; and a search revealed narcotics in the house and in the garage—and (2) that defendant and his companion had come there with obvious knowledge of Tyler's narcotics activities and that narcotics transactions were taking place in the residence—the first thing defendant said to them was "What's the matter with you? The man is across the street," the reasonable inference from which is that defendant assumed that he and Tyler were engaged in a narcotic transaction and was warning them that sheriff's deputies were nearby. These facts articulated in Officer Cook's testimony were more than sufficient to justify a reasonable suspicion that defendant had come to the premises to buy narcotics,[1] and warranted investigation to determine who defendant was and why he was there. Thus it was a legitimate investigative function Officer Cook was discharging when he sought to detain defendant and his companion; and for his own safety he ordered them to raise their hands.[2]

█ Appellant claims that even had there been a lawful detention the seizure of his revolver was unlawful because Officer Ainsworth, who was

[1]Officer Cook testified "It was my opinion that due to the amount of heroin that was seized and the previously mentioned subjects going in and out of there that in fact Mr. Tyler was selling heroin, that persons coming to the location were there for the purpose of purchasing heroin."

[2]In this connection Officer Cook testified "Through my experience of being by myself with one defendant that had already been previously arrested and having two more come up, for my own safety, that I have their hands placed in a position where I know where they're at so they can't obtain any weapons from their person until we have a chance to check them."

in the house, was not threatened and failed to first conduct a pat-down search before going into his pocket. We uphold the validity of the seizure of the weapon from the person of defendant on the authority of *Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868] and *Adams* v. *Williams,* 407 U.S. 143 [32 L.Ed.2d 612, 92 S.Ct. 1921].

In *Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], an officer stopped Terry and two others who he concluded contemplated a robbery, and conducted a pat-down of the outer surfaces of Terry's clothing; upon feeling a pistol in his overcoat pocket he reached inside and removed a gun. The United States Supreme Court upheld the temporary detention for less than probable cause, and "a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." (P. 27 [20 L.Ed.2d p. 909].) However, in justifying the particular intrusion the officer must be able to point to specific and articulable facts which, taken together with rational inferences he is entitled to draw from these facts in light of his experience, reasonably warrant that intrusion. (Pp. 21, 27 [20 L.Ed.2d pp. 906, 909].) "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citations.]" (P. 27 [20 L.Ed.2d p. 909].)

The facts available to Officer Ainsworth at the moment of seizure were of such a nature as to warrant a man of reasonable caution in the belief that the action taken was necessary. Officer Ainsworth was alone in confined quarters of the living room guarding five male adults (one under detention and four under arrest for narcotics activity), one of whom was not handcuffed and some under the influence of narcotics; the other two officers were searching other areas of the house. He knew that a .32 revolver, bowie knife and narcotics had been found in the house and, from his experience, that users and sellers of narcotics "more times than not" have weapons readily available either on their person or on the premises. It was nighttime and he knew Officer Cook was alone outside with Tyler, who was under arrest but not handcuffed, and two others (defendant and his companion) who had come on the premises also were not handcuffed. He also knew Officer Cook was attempting to detain defendant because he heard him order defendant to raise his hands; after hearing Cook's second command, he saw defendant fail to comply and walk away from Officer Cook toward the front porch; on Officer Cook's third command defendant was in front of him and still refused to obey; at that moment he saw defendant's left hand above his shoulder but his right hand remain near the

right hand pocket of his jacket at which time "instantaneously" with Cook's movement toward defendant, and by "instinct," he reached directly into defendant's right hand coat pocket and pulled out the gun. Officer Ainsworth had observed defendant's obvious resistance to Officer Cook's efforts to detain him and, in effect, his flight from Cook toward the house; he had witnessed defendant's refusal to obey Cook's commands to raise his hands, and the position of his right hand (in relation to his partially raised left hand) which he kept in the area of his right jacket pocket indicated to him that in that pocket defendant might well have access to a weapon. A reasonable apprehension of danger to himself and to his partner arose in Ainsworth's mind, and under the circumstances was justified.

Without question a pat-down search at this point would have been proper. Of the pat-down of Terry the court said in *Terry* v. *Ohio:* "We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken." (P. 30 [20 L.Ed2d p. 911].) However, Officer Ainsworth did not conduct a pat-down of outer clothing before seizing the revolver. He faced defendant and three male adults in close quarters in circumstances establishing defendant's clear resistance to lawful police authority. His experience as an officer had taught him that one in defendant's position "more times than not" carried a weapon, thus when, on Officer Cook's last command to raise his hands, he saw defendant's left hand above his shoulder but his right hand remain near his jacket pocket, he acted "instantaneously" by "instinct," and in an almost reflexive motion went directly to defendant's right jacket pocket and took out a .32 revolver. Under such circumstances it would appear to be clearly unreasonable to deny Officer Ainsworth the power to take necessary measures to determine whether defendant was in fact carrying a weapon and to neutralize any threat of physical harm. There can be no legitimate challenge to the scope, purpose, character, extent or manner of the search for it was carefully confined to what was minimally necessary to learn whether defendant was armed and

to disarm him at once; the officer conducted no exploratory search and beyond the one pocket did not invade defendant's person; and the seizure of the weapon was the product of nothing more than self-protection and survival. Although he saw no bulge in defendant's pocket there was "definitely not" any reason for him to believe a pat-down would have missed the gun. We cannot say that the exigencies of the situation did not justify Ainsworth's quick decision to take the weapon.

In *Adams* v. *Williams,* 407 U.S. 143 [32 L.Ed.2d 612, 92 S.Ct. 1921], the officer also by-passed the pat-down of outer clothing. In a high crime area around 2:15 a.m. the officer, having been told that defendant, seated in a near-by vehicle, was carrying narcotics and a gun at his waist, approached defendant to investigate and asked him to open the door; defendant did not obey his command but instead rolled down the window; the officer then reached directly into defendant's waistband and removed a revolver. On the authority of *Terry* v. *Ohio,* the United States Supreme Court upheld the temporary detention and seizure of the gun. The court said that under the circumstances the officer had ample reason to fear for his safety and when defendant failed to comply with his request to step out of the car and instead rolled down his window "the revolver allegedly at [defendant's] waist became an even greater threat. Under these circumstances the policeman's action in reaching to the spot where the gun was thought to be hidden constituted a limited intrusion designed to insure his safety, and we conclude that it was reasonable. The loaded gun seized as a result of this intrusion was therefore admissible at Williams' trial. *Terry* v. *Ohio,* 392 U.S., at 30." (407 U.S. at p. 148 [32 L.Ed.2d at p. 618].) In neither *Adams* v. *Williams* nor the case at bench did the officer first make a pat-down search; and in each case defendant refused to comply with the officer's orders, the officer reasonably believed that defendant had a weapon, the confined circumstances were such as to make the gun concealed on defendant's person a greater threat and the officer had ample reason to fear for his safety.

The officer's instinctive action was similar to that in *People* v. *Superior Court* [*Holmes*], 15 Cal.App.3d 806 [94 Cal.Rptr. 728]. The officer told defendant to keep his hands in plain view but instead he reached into his rear pocket and tried to pull something out whereupon the officer grabbed his hand, removed it from the pocket and by-passing a pat-down reached in and removed the gun. Although Officer Ainsworth did not testify he saw defendant's hand move to his pocket, the facts articulated in his testimony were also sufficient to justify the strong suspicion that he was armed and dangerous and demonstrated "the reasonableness of the officer's action in removing and seizing the firearm without first performing the

ceremony of a pat-down." (P. 810.) The court further stated: "To require a police officer in these circumstances to conduct a pat-down before taking obviously required action to protect his own life would be contrary to every dictate of reason. . . . The requirement of a pat-down search for weapons generally has been discussed in cases in which the officer only suspects upon the basis of articulable facts that the person detained may be armed. These cases generally have not involved situations in which the suspect has engaged in conduct which would lead a reasonable and prudent officer not only to suspect that the person detained is armed but also to apprehend that he is preparing and immediately threatening to use the weapon to fire upon the officer." (P. 810.) It concluded, "In this case, as in *People* v. *Woods, supra,* 6 Cal.App.3d 832 [86 Cal.Rptr. 264], the holding is required 'as a matter of common sense' that the officer's actions were reasonable and lawful. Any other course would have been foolhardy and quite possibly suicidal." (P. 813.) In *People* v. *Atmore,* 13 Cal.App.3d 244 [91 Cal.Rptr. 311], no pat-down was made and when defendant grabbed his jacket pocket, the officer felt what he believed to be a shotgun shell and reached into the pocket; he removed a marijuana cigarette and a lipstick container. The court upheld the seizure; of the officer's failure to pat-down defendant's outer clothing, the court said at page 248: "We do not believe, however, that under the circumstances the officer was required to proceed in the coldly logical sequence which may suggest itself after the event. It appears from the record that his reaching into the pocket was almost a reflexive motion, provoked by defendant's sudden gesture toward the pocket and his own feeling of the contents. We cannot say that under all of the circumstances defendant's constitutional rights were violated."

Finally, without merit is appellant's claim that the trial court erred in denying his renewed motion to exclude the gun from evidence at the trial. He argues that Officer Ainsworth's trial testimony shows he reached into his pocket and took the gun at a time when his hands were already above his shoulders and a gun was leveled at his head, thus there appeared to be no justification for dispensing with the pat-down. The evidence must be considered in light of Officer Ainsworth's testimony that his seizure of the gun was simultaneous with the movement of Officer Cook in forcing defendant's hands above his shoulders. At the instant Officer Cook acted Ainsworth reached into defendant's pocket and took his gun, he saw defendant's "left hand was in a position almost right above his shoulder. His right hand was in front of his body. The reason I remember that is because I recall seeing Officer Cook reach over, grab him by the wrist and forced his hands up. . . . So it would make his hands up probably between his waist and his chest area." Officer Ainsworth's movement resulting in seizure of the weapon was made out of "instinct, self-survival" and simul-

taneous with the action of Officer Cook. On the motion Officer Ainsworth testified he acted "instantaneously" with Officer Cook who tapped defendant on the head and raised his hands. His trial testimony was not sufficiently different from that on the 1538.5 motion to justify the trial court in excluding the gun.

The judgment is affirmed.

Wood, P. J., and Hanson, J., concurred.