The STATE of Ohio, Appellee,

v.

SMITH, Appellant.

[Cite as *State v. Smith* (1996), 116 Ohio App.3d 842.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15838.

Decided Dec. 20, 1996.

*Mathias H. Heck, Jr.*, Montgomery County Prosecuting Attorney, and *Julie A. Peters*, Assistant Prosecuting Attorney, Appellate Division, for appellee.

*Michael R. Pentecost*, for appellant.

BROGAN, Presiding Judge.

Robert A. Smith, Jr. appeals from his conviction in the Montgomery County Common Pleas Court of drug abuse. In a single assignment of error, appellant contends that the trial court erred in overruling his suppression motion because the cocaine recovered from him was the product of an illegal search.

The facts, which are not seriously in dispute, are recited in the trial court's decision:

"Patrolman Abney, a veteran of 14 years on the Dayton Police Department, testified that he and his partner, while dressed in the uniform of the day and riding in a marked Dayton police cruiser on October 18, 1995, at 12:55 a.m., were moving through Parkside Homes, a Dayton Metropolitan Housing Authority development. The officer testified that they cruised this area frequently because it was the scene of a high incidence of drug activity and prostitution.

"When the cruiser was on Niles Place, he and his partner noticed a parked vehicle, the partner observing that four people ducked down inside as the lights of the cruiser came upon the parked vehicle. The cruiser was stopped in a head-on fashion in front of the parked vehicle, and each officer went to opposite sides of the four-door vehicle. Mr. Abney testified that he saw no one at all until he was right at the vehicle when he showed his flashlight in and observed four people ducked down inside. Officer Abney, being on the passenger side, observed a person subsequently identified as the Defendant seated in the right rear

passenger seat leaned over to his left with his right hand inside his sock. As the light penetrated that area, the Defendant removed his hand from the sock. Officer Abney asked the Defendant what he had in his sock, at which time the Defendant started to swing his feet as if to get out of the vehicle. Observing Officer Abney standing there, the Defendant put his feet back inside. The officer again repeated his inquiry of what he had put in his sock, and when the Defendant responded, 'Nothing,' Officer Abney said, 'If you didn't put anything in your sock, take your sock off.' At that point the Defendant again swung his legs out, took off his left sock, and a small, brown piece of paper dropped to the pavement. The officer retrieved the paper, and its contents subsequently field-tested positive for cocaine.

"After briefly questioning the other three people in the vehicle, the three people were permitted to leave in the vehicle with a warning to stay off the private property.

"Officer Abney concluded his testimony with the statement that he had been involved in approximately 100 drug arrests in the Parkside Homes area. The officer also testified that he had found weapons, as well as other contraband, in the socks of individuals whom he had arrested.

"Based upon the foregoing testimony, the Court concludes that while the vehicle in which the Defendant was located was not literally stopped by the officers, the vehicle and the four people inside were not free to leave until released by the officers. The Court also concludes that while Officer Abney did not personally search the sock of the Defendant, the instruction to the Defendant was quite clear, and this constituted a 'frisk.' Thus, although this was not the classic 'stop and frisk' situation, the same principles of law apply. Thus, the conduct of the officers involved amounted to just that."

The appellant does not dispute that the police may have had grounds to stop him, but he contends that the order for him to remove his sock exceeded the permissible limits of a "frisk" as articulated in *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

In *Terry*, Chief Justice Warren stated the holding of the majority opinion:

"We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of

such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken." *Id.* at 30–31, 88 S.Ct. at 1884–1885, 20 L.Ed.2d at 911.

In *State v. Franklin* (1993), 86 Ohio App.3d 101, 619 N.E.2d 1182, the Hamilton County Court of Appeals affirmed the trial court's suppression of a concealed weapon found after an officer commanded the defendant to empty his pockets because it was an intrusion that exceeded the limited frisk of outside clothing envisioned under *Terry* and converted the investigatory stop into an unlawful arrest without probable cause. The policemen in *Franklin* were responding to an anonymous report of "a group of people standing out by a green car shooting."

Similarly, the Franklin County Court of Appeals suppressed evidence where a police officer reached into a pocket of a suspect without frisking the suspect first. See *State v. Kratzer* (1972), 33 Ohio App.2d 167, 62 O.O.2d 257, 293 N.E.2d 104.

The state contends that a patdown frisk need not be conducted in all circumstances, citing *Adams v. Williams* (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612. In that case, upon information that the suspect seated in a car was carrying narcotics and had "a gun at his waist," the investigating officer immediately reached through the window and removed a revolver from the suspect's waistband. The majority explained:

"While properly investigating the activity of a person who was reported to be carrying narcotics and a concealed weapon and who was sitting alone in a car in a high crime area at 2:15 in the morning, Sgt. Connolly had ample reason to fear for his safety. When Williams rolled down his window, rather than complying with the policeman's request to step out of the car so that his movements could more easily be seen, the revolver allegedly at Williams' waist became an even greater threat. Under these circumstances the policeman's action in reaching to the spot where the gun was thought to be hidden constituted a limited intrusion designed to insure his safety, and we conclude that it was reasonable." *Id.* at 147–148, 92 S.Ct. at 1924, 32 L.Ed.2d at 618.

Professor Wayne LaFave notes that while *Adams* might be read as holding that there is no need for a patdown when the officer has some information as to the precise location of the weapon, a proposition adopted by some courts, this view is unsound. He notes that *Adams* is better explained on the ground that the suspect's failure to respond to the officer's order to alight from the vehicle made it impossible for the officer to carry out an effective patdown or to conduct even a partial patdown without putting himself into a much more dangerous position vis-a-vis the suspect. 4 LaFave, Search and Seizure (3 Ed. 1996), at 272.

LaFave notes that there may be other situations where it would be foolhardy for a police officer to do anything short of an immediate search. The more common case will be that in which the suspect makes threatening movements, as where he quickly thrusts his hand into his waistband with a metallic-appearing object or where he makes a sudden move to his pocket notwithstanding a police order to keep his hands in plain view. 4 LaFave, at 273.

In *People v. Superior Court* (1971), 15 Cal.App.3d 806, 810, 94 Cal.Rptr. 728, 730, the court commented:

"The requirement of a pat-down search for weapons generally has been discussed in cases in which the officer only suspects upon the basis of articulable facts that the person detained may be armed. These cases generally have not involved situations in which the suspect has engaged in conduct which would lead a reasonable and prudent officer not only to suspect the person detained is armed but also to apprehend that he is preparing and immediately threatening to use the weapon to fire upon the officer."

In the case *sub judice,* the officer had no information that the defendant was armed beyond his statement "there's always a possibility that a small caliber handgun can be concealed in a sock or pants." There was no evidence that the defendant made any threatening move or would have refused to exit the vehicle upon the officer's request so that he could be frisked.

It is important to remember that the Constitution permits searches only upon "probable cause" to believe a crime has been committed and the person to be searched probably committed it. *Draper v. United States* (1959), 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. We conclude as did the *Franklin* court that Officer Abney's order to the defendant to remove his sock and throw it outside the vehicle amounted to a search. There is no suggestion by the state that the police possessed probable cause that the defendant had or was committing a crime before the defendant was ordered to remove his sock.

The trial court erred in denying the defendant's suppression motion. The assignment of error is well taken. The judgment of the trial court is reversed.

*Judgment reversed.*

WOLFF and GRADY, JJ., concur.