[Crim. No. 9057.   Second Dist., Div. Two.   April 1, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN PAUL
RANDAL, Defendant and Appellant.

Lionel Richman, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—This appeal is taken from the judgment of conviction entered against appellant following a nonjury trial upon an information charging him with the crime of possession of marijuana in violation of section 11530 of the Health and Safety Code. He was found to have suffered two prior felony convictions.

By way of assignments of error, appellant contends that the evidence against him was obtained by an illegal search and seizure and that he was deprived of procedural due process by the conduct of the trial court in propounding certain questions. Viewing the evidence in the light most favorable to respondent, in conformity with the familiar rule, the pertinent facts may be summarized as follows:

On January 6, 1963, at approximately 11 p.m. Joseph A. Wambaugh, a police officer for the City of Los Angeles, observed a 1954 Oldsmobile convertible near the intersection of San Marino and Magnolia Streets, Los Angeles. As the automobile passed Officer Wambaugh, who was parked at the curb in an unmarked police vehicle, he saw the passenger look in his direction. Thereupon the automobile suddenly swerved, turning south on Magnolia, its tires squealing, on the wrong side of the street and proceeding at a very excessive speed. Two men were in the car and appellant was the passenger.

Officer Wambaugh started his automobile and pursued appellant's vehicle until he saw it pull into a driveway near 965 Magnolia Street. He pulled up behind the car as it stopped. Going into the driveway, he turned on his red light. Officer Wambaugh and his fellow officer got out of the car and walked up to appellant and Richard DeWulf, the driver, who got out of their car. The officers had a conversation with each man separately and later with both together.

Officer Wambaugh asked DeWulf where he lived. DeWulf said, "I live right here," indicating the apartment building at 965 Magnolia. Officer Wambaugh asked DeWulf where appellant lived and DeWulf said, "He is my roomate. He lives with me." Officer Wambaugh then went over to appellant

and had a conversation with him. He asked appellant where he lived, and appellant gave an address in the northeastern part of Los Angeles. Officer Wambaugh asked, "Do you live here with this man?" and appellant said, "No." The officer asked DeWulf again, this time in appellant's presence, where DeWulf lived, and he said, "I live here in Number 11 and he lives with me." Officer Wambaugh said, "Mr. Randal denies living with you." DeWulf replied, "I don't know why he denies that."

Officer Wambaugh asked DeWulf whether he could look through his car, and DeWulf said, "Go ahead." The officer asked him if he could also look in the trunk. DeWulf said, "You can look through the whole car. I have nothing to hide." The officer found a 3/4-inch drill, brace and bit and keyhole saw.

DeWulf repeated several times, "I don't know why he is lying about where we live. We are going to get into trouble if this keeps up." He said, "Would you please come with me? I will show you that I live there in Apartment 11 and so does he. We will clear this thing up." Officer Wambaugh accompanied DeWulf, and along with appellant and Officer Bujer, they went to apartment 11 where DeWulf unlocked the door and invited them in.

DeWulf said, "Go in my bedroom. My clothes are in there, my other belongings. You will see that I live here." Officer Wambaugh took a few steps into the open doorway of the bedroom where the light was on, and observed two hand rolled cigarettes on top of a clock radio on the dresser. The cigarettes contained a green leafy material.

Officer Wambaugh returned to the living room and gave a signal to his partner. Officer Bujer handcuffed both men. The apartment was then searched and a wax-paper sandwich bag containing a few grams of green leafy material was found. Both men were told they were under arrest for possession of marijuana.

Later, around midnight, at the Wilshire jail, appellant said to Officer Wambaugh in the presence of DeWulf and Officer Bujer, "That pot belongs to me. I bought a pinch from a guy named Dave downtown for four bucks. I smoked two joints, that is the two you found in the bedroom. DeWulf didn't know anything about it." Officer Wambaugh said, "I am not familiar with the word 'pinch,' is that half a can?" Appellant replied, "Yes, that is about half a can." The

green leafy substance in the wax-paper container and the contents of the two roaches were marijuana.

It is manifest from the foregoing summary of the evidence that the conduct of the officers was entirely reasonable and proper, and that the narcotics, and appellant's admission of ownership were admissible. The fact that appellant and De-Wulf gave testimony which conflicted sharply with that of the officers in certain respects merely created a question for the trier of the facts, whose resolution thereof will not be disturbed upon appeal.

The suspicious movements of the car in which appellant was a passenger gave the police ample justification for conducting an investigation of its occupants. (*People* v. *Mickelson*, 59 Cal.2d 448, 454 [3 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Cowman*, 223 Cal.App.2d 109, 116-118 [35 Cal.Rptr. 528] (hearing denied).) ▪ After the occupants had voluntarily stepped from the vehicle, their "pat down" for weapons was entirely proper. (*People* v. *Martin*, 46 Cal.2d 106, 108 [293 P.2d 52]; *People* v. *Lewis*, 187 Cal.App.2d 373, 376 [9 Cal.Rptr. 659].)

We cannot believe that any citizen who might be subjected to this minor indignity during a police investigation resulting from his unusual conduct would ever seriously seek to equate this limited invasion of his privacy and the need of law enforcement officers to protect themselves from the unexpected murderous assaults that regrettably occur all too frequently during the performance of their duties.

▪ In the instant case, the erratic movements of the vehicle, followed by the conflicting statements given by its occupants, fully warranted the officers' request to conduct a search thereof. The trial court's determination that appellant and the driver of the vehicle consented to such search is supported by the evidence. The discovery of tools similar to those used in recent burglaries in the area might well have justified the officers in immediately placing appellant and his companion under arrest for suspicion of burglary. (*People* v. *Ruhman*, 224 Cal.App.2d 284, 286-287 [36 Cal.Rptr. 493] (hearing denied).)

We need not decide this question, however, since appellant's companion thereupon invited the officers into the apartment in an attempt to overcome the suspicions that reasonably had been aroused by appellant's false and inconsistent statements.

▪ Since the officers observed the marijuana cigarettes

that were plainly visible on top of a dresser, the immediate arrest of both parties was fully justified and the search which followed was entirely reasonable and proper. (*People* v. *Michael*, 45 Cal.2d 751, 753 [290 P.2d 852]; *People* v. *Martin*, 45 Cal.2d 755, 761-762 [290 P.2d 855].)

Appellant's second assignment of error regarding the alleged deprivation of procedural due process relates to a series of questions propounded to appellant and DeWulf, the latter having been called as a defense witness, by the trial court. Although these inquiries were perhaps more extensive than usual, we find nothing approaching prejudicial misconduct therein. The trial judge, sitting as the trier of the facts, clearly was attempting to determine the credibility of the respective witnesses, whose testimony was so extremely conflicting. Appellant and his witness had testified that they had not consented to the search either of the car or of the apartment and that they had, in fact, inquired of the officers whether search warrants were not required in the circumstances.

The trial judge had questioned the officers rather closely as to the exact language in which their requests for consent had been couched, and even as to their motives in using certain specific words therein. It was clear, however, that the court's purpose in eliciting this information was not to establish that if the events had occurred in the manner described by the officers, the consent given by the appellant and his companion nevertheless would have been ineffectual because the officers were aware of the efficaciousness that an express consent would have at the time of any future judicial proceeding. Rather, the court was seeking to determine from an examination of the officers' alleged motives for their conduct, whether, in fact, they had engaged in the conduct as they had described it.

Likewise, when the court examined appellant and his witness as to reasons for their alleged express refusal to consent to a search of their car and their apartment, he was not seeking to determine their guilt or innocence of the crime charged from their invocation of their constitutional rights or to impair their absolute privilege to insist upon these rights. As with the officers, the trial court was inquiring into motives of the witnesses in order to establish whether *as a fact* these rights had been invoked and violated in the fashion detailed by the witnesses.

In this nonjury trial, the judge had both the right and the

duty to satisfy himself as fully as possible on the credibility of the respective witnesses, particularly where the determination of the case rested solely on such determination. Even in a jury trial, it has been held that no error was committed when a judge undertook to question certain witnesses because he "was obviously seeking to elicit or clarify testimony on material points, and it is the right and duty of a judge to conduct a trial in such a manner that the truth will be established in accordance with the rules of evidence." (*People* v. *Corrigan*, 48 Cal.2d 551, 559 [310 P.2d 953].)

The judgment is affirmed.

Fox, P. J., and Roth, J., concurred.