[Crim. No. 13900.    Second Dist., Div. Three.    Aug. 28, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIE O. DAVIS, Defendant and Appellant.

Albert D. Silverman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas Kallay, Deputy Attorney General, for Plaintiff and Respondent.

FORD, P. J.—The defendant was charged with the crime of robbery by an information containing three counts. In a trial by jury he was found guilty, each offense being determined to by of the first degree. The court sentenced him to be punished by imprisonment in the state prison. He has appealed from the judgment.

The first contention made is that the defendant was denied his constitutional right to a speedy trial. The information was filed on December 1, 1966. On the next day the public defender was appointed to represent the defendant, the defendant was arraigned, he pleaded not guilty and his trial was set for January 25, 1967. Since inadvertently the defendant was not transported by the sheriff's office from jail to the court in its branch at Long Beach on January 25, 1967, the trial was continued to January 26, 1967. But no

department of that branch was available for the trial of the case on January 26 and the matter was continued to January 27, on which day there was another continuance to January 30 for the same reason. The minutes of the court for the latter date state that on the motion of the defendant the court ordered the "trial to trail to January 31, 1967."

On January 31, the deputy public defender informed the court that he was still engaged in trial in another department and requested that the matter "trail" until the next day. The defendant objected and asked that counsel be appointed for him from "the bar association." The court denied the request. The public defender stated that he had been urging the defendant to choose a date in the future, "next week, eight or nine days from now," when the deputy public defender would be reasonably free to proceed, and then he would have the defendant's witnesses subpoenaed for that date. The court continued the matter to the next day, February 1.

On February 1, the deputy public defender stated to the court that he believed that the defendant was objecting to having him as his attorney and further stated that he was not prepared to try the case, having been engaged in a robbery trial and having been in a kidnaping trial immediately before the robbery trial. The defendant stated that his constitutional right to a speedy trial had been violated since the 60-day period[1] had expired on the previous day and the charges should be dismissed if he could not go to trial forthwith. The court denied the defendant's motion for dismissal. Upon the court's request that he name a date when he would be ready to try the case, the deputy public defender suggested February 10. Based upon the denial of his motion for dismissal the defendant again asked that counsel other than the public defender be appointed to represent him. That motion was denied. The deputy public defender thereafter stated that he had just finished a trial; he thought that he could be ready in the defendant's case on February 10. He further stated that he had completed about 75 percent of the preparation for trial, but that the defendant had additional information which

[1]Section 1382 of the Penal Code is in pertinent part as follows: "The court, unless good cause to the contrary is shown, must order the action to be dismissed in the following cases: . . . 2. When a defendant is not brought to trial in a superior court within 60 days after the finding of the indictment or filing of the information . . .; except that an action shall not be dismissed under this subdivision if it is set for trial on a date beyond the 60-day period at the request of the defendant or with his consent, express or implied . . . and if the defendant is brought to trial on the date so set for trial or within 10 days thereafter."

he had not received and which would have a bearing on the matter of preparation. Without the defendant's personal consent the court continued the case for trial to February 10, 1967, and stated that the case would have priority on that date.

On February 10, 1967, the defendant requested that he be permitted to represent himself in lieu of representation by the public defender. After asking the defendant as to his education and age and as to whether he understood the defenses that might be available, the possible penalty in the event of conviction, and that he would be entitled to no special favors if he represented himself, the court ordered that the public defender be relieved and that the defendant be permitted to represent himself. The defendant stated that he was ready for trial.

When the case was thereafter called for trial on February 10, 1967, at 2 p.m., an attorney newly retained by the defendant appeared for him and made a motion to dismiss upon the ground that the defendant had been denied his right to a speedy trial. Part of his argument was as follows: ''If the Court did, then, on February 1st on its own motion or initiative cause this case to come over to the 10th, then the Court has erred because at the very most, the Court could have trailed this case from the 25th.'' The motion was denied. The case thereupon proceeded to trial.

The defendant's proper recourse for the protection of his right to a speedy trial was to petition for a writ of mandate or of prohibition prior to the commencement of trial. (*People* v. *Wilson,* 60 Cal.2d 139, 149-150 [32 Cal.Rptr. 44, 383 P.2d 452].) He did not do so. While the order denying his motion to dismiss was not directly appealable, it may be reviewed on appeal from the judgment of conviction. It must be kept in mind, however, that the purpose of the right to a speedy trial is to protect the accused from having criminal charges pending against him for an undue length of time. In the case presently before this court the delay has ended and the defendant has been tried and convicted. Consequently the defendant cannot be relieved of a delay that no longer exists.

The scope of appellate review of the matter on appeal from the judgment of conviction is limited to weighing the effect of the delay in bringing the defendant to trial and the fairness of the subsequent trial. A reversal cannot be based upon the delay unless the error was a prejudicial one. (*People* v. *Wilson, supra,* 60 Cal.2d 139, 150-152.)

The record makes it clear that the primary cause of the delay of which the defendant complains was the fact that

the deputy public defender, because of his heavy caseload, was not prepared to try the case before February 10, 1967. The defendant had nothing to gain in going to trial earlier under such circumstances. But aside from that matter, the defendant has not shown that he was prejudiced in any respect by reason of the fact that the trial did not commence until February 10, 1967. An independent review of the record discloses no basis for a claim of prejudice. Measuring the effect of the delay in the light of the *Chapman* criterion (*Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]) since a constitutional right is involved (*Klopfer* v. *North Carolina,* 386 U.S. 213, 222-226 [18 L.Ed.2d 1, 7-10, 87 S.Ct. 988]), we are satisfied beyond a reasonable doubt that the delay complained of did not contribute to the defendant's conviction and was harmless. Consequently there was not error of such a nature as to compel a reversal of the judgment.

The defendant also contends that the search of the automobile in which he was riding was illegal. One of the weapons found under the front seat was described as being a .38 Special Cobra revolver. There was evidence to support the inference that that revolver had been stolen by the defendant in the course of one of the robberies involved in the case and had been used by him in the perpetration of another.

The last of the three robberies charged occurred on October 29, 1966. A deputy sheriff testified that on November 5, 1966, at approximately 11:15 p.m. he arrested the defendant. He had observed a 1962 two-door Ford automobile, tan in color and bearing license number QXZ 697, "run a signal" at Normandie and Imperial. The defendant and two other men were in the vehicle. The only reference in the record to the circumstances under which the search was made is contained in the following portion of the direct examination of the officer: "I asked him [the defendant] who the vehicle belongs to. He said his wife. I asked him if it was okay to search the vehicle. He said it was." There was no cross-examination as to the matter of consent to the search and no further evidence with respect thereto was offered by either the People or the defendant.

When the People's exhibits which had been theretofore marked for identification were offered in evidence, the objection made on behalf of the defendant was stated to be "on the ground that sufficient foundation has not been laid as to each one of the objects, on the ground that they are irrelevant, immaterial." There was no specific objection to the introduc-

tion in evidence of the revolver on the ground that it was obtained by means of an illegal search and seizure.

In the absence of an appropriate objection in the trial court, it cannot be successfully contended on appeal that it was error to permit the introduction of evidence because it was illegally obtained. In the face of a proper objection the prosecution might have been able to offer additional evidence on the issue raised by the objection. (See *People* v. *Ibarra,* 60 Cal.2d 460, 462-463 [34 Cal.Rptr. 863, 386 P.2d 487].)

The objection as expressed by defendant's counsel did not specify the ground that the evidence was illegally obtained. The governing law is embodied in section 353 of the Evidence Code in the following language: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion; . . ." A portion of the comment of the Legislative Committee is as follows: "Subdivision (a) . . . codifies the related rule that the objection or motion must specify the ground for objection, a general objection being insufficient. Witkin, California Evidence §§ 703-709 (1958)."

But even if it be assumed that the objection made on behalf of the defendant was sufficient to preserve for appellate review the question of the legality of the search of the automobile, the contention of the defendant that the Cobra revolver was improperly received in evidence is untenable. The deputy sheriff was warranted in stopping the automobile in which the defendant was riding when he observed a violation of the law governing the operation of motor vehicles. (*People* v. *Evans*, 240 Cal.App.2d 291, 298 [49 Cal.Rptr. 501].) Standing alone, the traffic violation did not, of course, empower the officer to search the car since such a search would have no relation to the traffic violation. (*People* v. *Blodgett*, 46 Cal.2d 114, 116 [293 P.2d 57]; *People* v. *Shapiro*, 213 Cal.App.2d 618. 621 [28 Cal.Rptr. 907].) The record does not disclose the circumstances which prompted the officer to ask for permission to search the vehicle. But if that search was made pursuant to permission freely given by the defendant, he is not in a position to complain with respect to the introduction in evidence of the revolver found in the course of the search. (*People* v. *Parks*, 230 Cal.App.2d 805,

810 [41 Cal.Rptr. 329]; *People* v. *Randal,* 226 Cal.App.2d 105, 108 [37 Cal.Rptr. 809].) The deputy sheriff testified that the defendant consented to the search, his testimony on that subject was not challenged by cross-examination, and there is nothing in the record which suggests that that was not the fact. Contrary to the argument of appointed counsel, there was no duty on the part of the deputy sheriff to explain to the defendant that it was his constitutional right to refuse such permission. (*People* v. *Chaddock,* 249 Cal.App.2d 483, 485 [57 Cal.Rptr. 582]; *People* v. *Roberts,* 246 Cal.App.2d 715, 728-729 [55 Cal.Rptr. 62].)

■ The record discloses another matter relating to the admissibility of evidence which should be considered. One of the robberies occurred in a liquor store operated by Mr. Wax at approximately 4:30 or 5 p.m. on October 29, 1966. Mr. Wax testified that after the robber obtained the money he demanded that Mr. Wax give him cigarettes and whiskey. Mr. Wax complied, putting the articles in bags. The robber then fled in the direction of the home of Mr. and Mrs. Smith which was located behind the liquor store. Mrs. Smith testified that on that day at approximately 4:30 or 5 p.m. she saw a man running away from the vicinity of the liquor store carrying what appeared to be a paper bag. The man got into a car and the car was driven away. She obtained the license number of the vehicle. It was a beige or tan Ford or Dodge automobile. She called Mr. Wax and informed him as to the license number, which she had written down on a piece of paper. She later gave the paper to Mr. Wax.

After Mrs. Smith had completed her testimony Mr. Wax was recalled to the witness stand. He testified that in a telephone conversation shortly after the robbery Mrs. Smith gave him a license number which he wrote down. He further testified that he had with him in court what he had written down. Over the defendant's objection that it was hearsay the paper was received in evidence. Over the objection based on the best evidence rule, Mr. Wax was permitted to read aloud the license number. It was QXZ 697.[2] He stated that that was the number which he had received over the telephone from Mrs. Smith. In the course of cross-examination it developed that the notation of the license number which Mr. Wax had with him in court was not his original notation but was based on telephonic information that he had received from

[2]This was the license number which the deputy sheriff had testified was the license number of the car stopped by him because of a traffic violation.

his bookkeeper as to his original notation which he had made on an ice cube receipt hanging on a nail near the telephone when Mrs. Smith telephoned him. Thereupon the court ordered the exhibit withdrawn but refused to strike Mr. Wax's testimony, ruling that Mr. Wax had properly refreshed his recollection by use of the notation which had been stricken as an exhibit.

It is obvious that the information which Mr. Wax had received from his bookkeeper and had noted on a paper did not serve to refresh his recollection so that at the time of his testimony he had an actual recollection of the license number as given to him by Mrs. Smith. In short, such information had no effect whatsoever on his then present memory. Consequently, the concept of refreshing memory did not apply. (See 3 Wigmore on Evidence (3d ed. 1940) §§ 758-759; Comment (1956) 3 U.C.L.A. L.Rev. 616, 617.) Accordingly, since the information he had received from the bookkeeper was not competent evidence of the license number given to him by Mrs. Smith, his testimony as to the license number should have been stricken. But, as we will explain, in the light of subsequent testimony of Mr. Wax the error was harmless.

The defendant did not testify on his own behalf. After witnesses had testified on behalf of the defendant with respect to the issue of alibi, the deputy district attorney advised the court that Mr. Wax had informed him that he had his original notation and that he had made a mistake in his testimony as to the license number, the original notation being that the first letter thereof was O and not Q. In the presence of the jury it was stipulated that California license plate number OXZ 697 was issued to a 1964 Volkswagen automobile. Thereafter Mr. Wax resumed the witness stand and testified that a piece of paper he then had before him was the one on which he had written the license number which Mrs. Smith related to him on the telephone. Over the defendant's objection the paper was received in evidence.

Mrs. Smith had no recollection of the license number she observed and then stated to Mr. Wax over the telephone. Mr. Wax testified that he recorded the number, as given to him by Mrs. Smith, on a piece of paper. But at the trial he had no independent recollection of the license number. On the occasion of Mr. Wax's last appearance on the witness stand he testified that he then had with him the paper on which he had made the notition. The memorandum made by Mr. Wax could properly be used by him under the rule relating to past memory recorded. As stated by Professor Morgan:

"The problem is slightly more complex where the memorandum is the joint product of two or more persons. Witness W has observed the facts and reported them to witness X, who has made a record of them. Each swears to the accuracy of his own performance. On their combined oaths the memorandum is as fully verified as if either had both observed and recorded. The cross-examiner's task, however, is made somewhat harder by this division of testimony. Yet so long as a memorandum is produced which would have been admissible if made by the observer himself, reasonably adequate criteria of value are at hand for court and jury, and the contents of the writing should be received." (Morgan, *The Relation between Hearsay and Preserved Memory* (1927) 40 Harv.L.Rev. 712, 720.)[3]

The application of the doctrine of past memory recorded as advocated by Professor Morgan is in harmony with section 1237 of the Evidence Code which provides as follows: "(a) Evidence of a statement previously made by a witness is not made inadmissible by the hearsay rule if the statement would have been admissible if made by him while testifying, the statement concerns a matter as to which the witness has insufficient present recollection to enable him to testify fully and accurately, and the statement is contained in a writing which: (1) Was made at a time when the fact recorded in the writing actually occurred or was fresh in the witness' memory; (2) Was made (i) by the witness himself or under his direction or (ii) *by some other person for the purpose of recording the witness' statement at the time it was made;* (3) Is offered after the witness testifies that the statement he made was a true statement of such fact; and (4) Is offered after the writing is authenticated as an accurate record of the statement. (b) The writing may be read into evidence, but the writing itself may not be received in evidence unless offered

[3]The problem was briefly noted in the *per curiam* opinion in *Swart* v. *United States* (9th Cir. 1968) 394 F.2d 5, at page 6: "The sole issue on this appeal from a bank robbery conviction is whether the court erred in admitting testimony of police officers as to the license number of the 'get-away car,' recorded by the officers in their official reports as the observation of persons at the scene who appeared as witnesses but who had no present recollection of the number. The textwriters suggest that when the observer testifies to the accuracy of his report to the recorder and the latter testifies to the accuracy of the recording, the trial court may in its discretion admit the contents of the written report as the recorded past recollection of the observer. 3 Wigmore, Evidence § 751 (3d ed. 1940); McCormick, Evidence § 279 (1954 ed). In any event, even if the evidence were hearsay reversal would not be required since the admissible evidence of appellant's guilt was overwhelming."

by an adverse party.'' (Italics supplied.) The comment of the Legislative Committee is in pertinent part as follows: ''Under Section 1237, however, the writing may be made not only by the witness himself or under his direction but also by some other person for the purpose of recording the witness' statement at the time it was made. In addition, Section 1237 permits testimony of the person who recorded the statement to be used to establish that the writing is a correct record of the statement. Sufficient assurance of the trustworthiness of the statement is provided if the declarant is available to testify that he made a true statement and if the person who recorded the statement is available to testify that he accurately recorded the statement.''

While the content of the notation could properly be read into evidence, the court should not have received the paper on which the notation was written in evidence as an exhibit. (Evid. Code, § 1237, subd. (b).)[4] But under the circumstances of the present case there is no reasonable possibility that such error might have contributed to the defendant's conviction.

The judgment recites that the jury found each offense to be robbery of the first degree ''and that defendant was armed as alleged.'' The quoted portion serves no purpose in this case and should be stricken. (*People* v. *Thomsen,* 239 Cal.App.2d 84, 97-98 [48 Cal.Rptr. 455].)

As to each count, the judgment is modified by striking therefrom the words ''and that defendant was armed as alleged.'' As so modified, the judgment of conviction of robbery of the first degree is affirmed with respect to all counts.

Cobey, J., and Shinn, J.,* concurred.

A petition for a rehearing was deemed denied September 30, 1968, pursuant to rule 27e, California Rules of Court.

---

[4]In Professor Morgan's article to which reference has been made, he stated (40 Harv.L.Rev., page 720, fn. 8): ''This assumes that the properly verified original [memorandum] is admissible, concerning which there is some conflict of authority. Dean Wigmore thinks it clearly receivable as 'the embodiment of the witness' testimony.' 2 Wigmore, Evidence, § 754. The late J. B. Thayer used to say that the memorandum as such was not admissible: its contents came in through the oral testimony. Mr. Hinton agrees with the Connecticut Supreme Court in regarding the dispute as a useless quibble. Hinton, Cases on Evidence (1919) 334, n. 8. As a matter of trial tactics, especially in those jurisdictions where exhibits are taken to the jury room, the tangible, unforgettable memorandum may have a distinct advantage over the oral recitation of its contents.''

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.