**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Michael Lee NACHTIGAL,
Defendant-Appellant.**

**No. 10508.**

Missouri Court of Appeals,
Springfield District.

Feb. 14, 1978.

Motion for Rehearing or Transfer
Denied March 7, 1978.

Application to Transfer Denied April
10, 1978.

W. Henry Johnson, Douglas, Douglas & Douglas, Neosho, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before STONE, P. J., and HOGAN and FLANIGAN, JJ.

FLANIGAN, Judge.

Charged as a second offender, (§ 556.-280),[1] defendant Michael Lee Nachtigal was convicted by a jury of robbery in the first degree by means of a dangerous and deadly weapon, (§ 560.135), and felonious assault with a deadly weapon, (§ 559.180), and was sentenced, on each offense, to 25 years' imprisonment, the sentences to run concurrently. Defendant appeals.

At approximately 9 p.m. on March 5, 1976, Jackie Clark, age 18, and his date, Debbie Smith, age 17, were sitting in Jackie's car which was parked on a country road near Joplin, Missouri. Two men, Gary Black and defendant Nachtigal, arrived at the scene in Black's car. The two men robbed Jackie of his billfold and its contents. They then ordered Jackie to step out of the car and to lean against it. While Jackie was in that position one of the men, using a sawed off shotgun, shot Jackie in the middle of the back. Although his wounds were grievous, Jackie survived.

■ Defendant's first "point relied on" is that the trial court erred in permitting the prosecuting attorney, over defendant's objection, to ask an improper question during voir dire examination of the prospective jurors. The challenged question was, "Are there any among you who, after you have listened to all the evidence and testimony, saw the exhibits, and given the court's instructions, could not for any reason, find guilt if proved beyond a reasonable doubt?"

At the time the question was asked, defense counsel objected to it "on the basis it invades the province of the court." On this appeal defendant challenges the statement on the ground that "it was an improper attempt to commit the jury to a course of action before they had heard the evidence." The latter objection was presented initially in the motion for new trial.

The objection now urged has not been preserved because it was not made at the time the alleged error occurred. *State v. Thomas*, 452 S.W.2d 160, 164[10] (Mo.1970);

*State v. Brookshire*, 353 S.W.2d 681, 688[17] (Mo.1962). In addition, voir dire questions substantially similar to the instant one have been held to be not vulnerable to the objection now sought to be presented. *State v. Gray*, 423 S.W.2d 776, 781[6] (Mo.1968); *State v. McCaine*, 460 S.W.2d 618, 622[11] (Mo.1970); *State v. Coles*, 467 S.W.2d 889, 890 (Mo.1971).

Defendant's first point has no merit.

■ Defendant's second point is: "The trial court erred in allowing officer Wells, over the objection of appellant, to testify from a police report, Exhibit No. 40, as to the description related to him of a shotgun allegedly missing from the home of Frank Black because officer Wells could not testify as to the correctness of the description contained in the report and because it constituted hearsay."

Frank Black and officer Wells testified as witnesses for the state. Frank Black is the father of Gary Black. Frank Black testified that defendant and Gary Black were together at the witness's home on March 5 and that they left the home about 8 p.m. in Gary Black's car.

Frank Black testified that he was the owner of two .410-gauge shotguns, one of which, "it came to my attention," was missing on Saturday morning, March 6. The missing shotgun was a "single barrel break-open." He testified that, in a telephone call he made that morning to the Joplin police station, he told officer Wells the specific description of the missing shotgun—"I gave him (Wells) the name of the gun, the manufacturer of the gun, the model number, and the serial number." He testified, however, that he did not remember the model number and the manufacturer, although he had given that information to Wells.

Wells testified that he had had two conversations with Frank Black, several hours after the crimes had been committed. In the first conversation Wells informed Frank Black that his son Gary and the defendant had been taken into custody. Wells also

---

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1969 V.A.M.S.

asked Frank Black if he had any shotguns and if he had any shotguns missing. Five minutes later Frank Black telephoned Wells and gave Wells a description of the missing shotgun. At that time Wells made a memorandum of that description and included it in his "full report" of his investigation of the crimes. Wells' report was state's Exhibit 40, which was not admitted into evidence.

The report, which had been typed by a police stenographer, had been reviewed and signed by Wells in its typewritten condition and, according to Wells, it accurately reflected the description of the shotgun as related to Wells by Frank Black. Shown state's Exhibit 40, Wells testified that it refreshed his recollection as to what Frank Black had told him as to the description of the shotgun. Wells was then permitted to tell the jury[2] that the description, which Frank Black had related to him, was "Springfield, Model 947, single shot, .410-gauge shotgun, serial number QZ–6."

In essence, Frank Black, having personal knowledge of the specific description of the shotgun and the fact that it was missing, related to officer Wells that description. At time of trial Black did not remember the specific description but did remember that he had stated it to Wells. Wells, who had no personal knowledge of the shotgun and the fact that it was missing, made a memorandum, the accuracy of which he verified, setting forth the description which Black related to him. With the aid of that memorandum, Wells told the jury that description. Both Black and Wells were present at the trial and were cross-examined. Under the following authorities, the testimony of Black and Wells, considered together, authorized the reception into evidence of the testimony of Wells setting forth the specific description which Frank Black had related to him. *U. S. v. Booz,* 451 F.2d 719, 724–725[6–10] (3rd Cir. 1971); *Swart v. U. S.,* 394 F.2d 5 (9th Cir. 1968); *People v. Davis,* 265 Cal.App.2d 341, 71 Cal.Rptr. 242, 246–

247 (1968); Wigmore on Evidence, Vol. III, § 751(3), p. 108; Wigmore, supra, Vol. V, § 1530, p. 450.

In *Booz,* K, a government witness, observed a license number on a vehicle and reported the license number to B, an FBI agent. At the trial K did not remember the license number but did testify that he had related it to B. B testified that K had told him the license number and, using the FBI report to refresh his recollection as to what K told him, B testified that the license number was S0633. On appeal the defendant claimed that B improperly testified as to hearsay, i. e., K's oral statement to B.

In rejecting defendant's contention, the court said, "Some courts and textwriters have taken the view that where as here, a record is the joint product of two individuals, one who makes an oral statement and one who embodies it in a writing, *if both parties are available to testify at trial as to the accuracy with which each performed his role,* the recollection may be admitted. (Authorities cited) We think such an exception to the hearsay rule is sound and adopted here. If [B] can verify the accuracy of his transcription and if [K] can testify he related an accurate recollection of the number to [B] we believe that, even though [K] may not have read the report, sufficient indicia of its accuracy exist to let the evidence go to the jury." (Emphasis added) *Booz,* supra, at p. 725.

In *Swart,* the sole issue on the appeal from a bank robbery conviction was whether the court erred in admitting testimony of police officers as to the license number of the "getaway car," recorded by officers in their official reports as to the observation of persons at the scene *who appeared as witnesses* but who had no present recollection of the number. In affirming the conviction, the court cited textbook authorities for the proposition that "when the observer testifies to the accuracy of his report to the recorder and the latter testifies to the accuracy of the recording, the trial court may in

---

2. Whether or not Wells was reading from state's Exhibit 40 in giving the jury the description is not reflected by the record.

its discretion admit the contents of the written report as the recorded past recollection of the observer."

In *Davis*, S observed the license number of a vehicle involved in an offense. S telephoned W and told him the license number. *Both S and W testified at the trial.* S did not remember the license number. W had made a written memorandum of the license number which S had related to him. At the trial W had no independent recollection of the license number but did testify that he had recorded the number as given him by S. The license number, as contained in W's memorandum, was properly admitted into evidence.

Defendant's second point has no merit.

■ Defendant's third point is that the trial court erred in permitting state's witness Frisbe, a representative of the company which manufactured the "missing" shotgun discussed under defendant's second point, to give certain testimony. Defendant's third point asserts that the testimony should not have been admitted "because there had not been sufficient foundation that the weapon used in the crime was manufactured by said firearms company and thus all the testimony of the representative was irrelevant and immaterial." Frisbe testified, using the specific description of the missing shotgun, that it was manufactured by his employer.

Defendant's third point is, in essence, dependent upon the validity of defendant's second point. The latter point having been resolved against defendant, defendant's third point fails.

Another reason for the invalidity of defendant's third point is that there was no objection made to Frisbe's testimony until the conclusion of recross-examination. At that time defendant's counsel made an objection, far more general than the one made here, and made no motion to strike. "An objection made after the answer is untimely and, in the absence of a motion to strike the answer, the ruling of the trial court is not preserved for review." *State v. Taylor*, 408 S.W.2d 8, 11[8] (Mo.1966).

■ Defendant's fourth point is that plain error, violating defendant's constitutional right to remain silent, was committed during the direct examination of officer Wells by the prosecutor.

The testimony under scrutiny was as follows:

Q. (By the prosecutor) After Mr. Nachtigal was placed under arrest at the Donut Shop, did he make another statement?

A. No, sir.

Wells was on the witness stand four times. Three times he was called as a state's witness and on each occasion he was cross-examined. His fourth appearance was as a witness for the defendant. The episode in question took place during Wells' *second* trip to the stand as a witness for the state.

On Wells' *initial* appearance he testified, on *cross-examination* by defense counsel that, after Wells had arrested defendant at the Donut Shop, "at that stage I don't believe he made any comment after his arrest, I don't recall it right off if he did." That testimony was responsive to the question which elicited it. Prior to that testimony, defense counsel had questioned Wells extensively concerning statements which the defendant made to Wells a few hours prior to the Donut Shop episode.

In *State v. Mayo*, 559 S.W.2d 264 (Mo. App.1977) defendant complained that the trial court erred in not ordering a mistrial when a police officer testified that at one point during defendant's interrogation at the police station he had refused to talk further and had refused to make a written statement. In rejecting defendant's claim of error, the appellate court pointed out that such testimony had been elicited by defendant's own counsel on cross-examination of the state's witness. "Appellant may not be heard to charge prejudice on account of testimony produced by appellant's own counsel. Any objection to the testimony of the police officer with respect to appellant's unwillingness to talk was waived." (Citing authorities) *Mayo*, supra, at p. 267. See

also *State v. Doepke*, 536 S.W.2d 950[2] (Mo.App.1976); *State v. Miller*, 501 S.W.2d 547, 548[2] (Mo.App.1973).

Defendant's fourth point has no merit.

Defendant's fifth and sixth points will be considered together. In essence they charge that the trial court erred in invoking the Second Offender Act (§ 556.-280) on the basis of a prior Oklahoma conviction because (a) the Oklahoma conviction[3] resulted in "a suspended sentence" and (b) the trial court improperly received certain testimony from the first assistant district attorney from Ottawa County, Oklahoma, concerning the conviction.

The state introduced the record of a judgment and sentence of the District Court of the Thirteenth Judicial District of the State of Oklahoma, sitting in Ottawa, Oklahoma. That record shows that on January 19, 1976, defendant, while represented by an attorney, entered a plea of guilty to the offense of burglary in the second degree, was found guilty by the court of that offense, and was sentenced to a term of four years in the Oklahoma penitentiary.

"[T]he important requirement for the protection of a defendant is that the *proof* (the evidence) as to prior convictions sufficiently establish those things required for the Second Offender Statute to be applicable, viz: that defendant was *convicted* of a prior offense punishable by imprisonment in the penitentiary; that he was *sentenced* therefor; and that he was subsequently *placed on probation, paroled, fined or imprisoned therefor.*" *State v. Blackwell*, 459 S.W.2d 268, 272[3] (Mo. banc 1970). (Emphasis in original)

Defendant argues that the Oklahoma conviction resulted in a "suspended sentence" and relies upon *State v. Gordon*, 344 S.W.2d 69 (Mo.1961). In *Gordon*, however, the showing of the prior conviction was defective because defendant had not been sentenced for the prior conviction. The record of the latter stated *"imposition* of sen-

tence hereby is suspended." In the case at bar the sentence was in fact imposed and only the *execution* of it was suspended. Defendant was "sentenced" in the sense required by *Blackwell*, supra. *State v. Bevelle*, 527 S.W.2d 657, 662[6] (Mo.App.1975); *State v. Briggs*, 435 S.W.2d 361, 363[3] (Mo. 1968); *State v. Hooper*, 399 S.W.2d 115, 117[6] (Mo.1966). Subpoint (a) has no merit.

The defendant himself testified that he was placed upon probation subsequent to the Oklahoma burglary conviction. The state's proof, coupled with the admissions of the defendant,[4] supported the findings of the trial court upon which he invoked § 556.280. The soundness of the attack upon the testimony of the first assistant district attorney need not be considered for the reason that his testimony, which was received outside the hearing of the jury, was merely cumulative and it was consistent with the findings of the trial court which were fully supported by the other evidence. Subpoint (b) has no merit.

Defendant's fifth and sixth points have no merit.

The judgment is affirmed.

All concur.

---

3. The state proved two prior Oklahoma convictions.

4. *State v. Brown*, 543 S.W.2d 56, 59[4] (Mo. App.1976); *State v. Bolden*, 525 S.W.2d 625, 634[17] (Mo.App.1975); *State v. Redding*, 357 S.W.2d 103, 109[14] (Mo.1962).