**STATE of Missouri, Respondent,**

v.

**Benjamin DeCLUE, Appellant.**

**No. 16548.**

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 16, 1991.

Motion for Rehearing or to Transfer
Denied Feb. 4, 1991.

Application to Transfer Denied
April 9, 1991.

Charles M. Shaw, Shaw, Howlett & Knappenberger, Clayton, for appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Chief Judge.

A jury found defendant Benjamin De-Clue guilty of incest, § 568.020,[1] and he was sentenced to two years' imprisonment. Defendant appeals.

The victim of the offense was defendant's 12–year–old daughter Michelle. Since defendant does not challenge the sufficiency of the evidence to support the conviction, it is unnecessary to describe the sordid events in detail. On March 3, 1987, the date charged in the information, defendant had sexual intercourse with Michelle at the family home. Michelle testified to other incidents involving sexual intercourse between her and the defendant.

Defendant's first point is that the trial court erred in refusing to accept a plea agreement entered into by the prosecutor and the defense, and further erred "in failing to place the matter on record stating on the record his refusal of same and failing to advise defendant in open court that the court determined itself not bound by the agreement and the reasons therefor and in interfering with the second subsequent agreement and in failing to reconsider said agreement prior to trial."

On January 23, 1989, several months prior to the trial, defense counsel informed the court of the particulars of a plea agreement which the defense had reached with the prosecutor. However, at that hearing defense counsel also informed the court that there "will not be a plea today, not because of myself or the defendant, but I am advised by the prosecutor that he is withdrawing the recommendation." The

---

1. All references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

prosecutor then stated, "The record can show that the state is withdrawing its recommendation," to which defense counsel replied, "Okay."

On the morning of the trial, May 30, 1989, defendant presented to the court a piece of paper bearing this handwritten memorandum: "Ben DeClue—SIS felony—566.100 Class D felony, one year court supervised probation, family counseling by licensed clinical psychologist approved by the court from outside the Crawford, Dent and Phelps County area, defendant shall pay court costs." This writing bears the signatures of prosecuting attorney Martin Mazzei and defense counsel. The prosecutor's signature is dated November 29, 1988.

Referring to the handwriting, defense counsel informed the court, "It would be the intentions of defendant this morning to enter a negotiated plea under the conditions that I have set forth in this respondent's Exhibit A. It's a signed plea agreement by myself, the prosecutor and the defendant in this case to the charges for which this defendant, the court intends to place it on trial. So this morning I am submitting the defendant's plea again." Defense counsel also told the court that the court "previously indicated it would not accept a plea in this case, not of guilty on a negotiated plea basis with the prosecutor." The court stated: "The court is refusing to accept the plea agreement as negotiated between you and Mr. Martin Mazzei, who was the prosecuting attorney." At the trial the state was represented by prosecuting attorney Randall Head who had replaced Mazzei.

Rule 24.02(d) provides, in pertinent part:

"2. If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. Thereupon the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report.

.    .    .    .    .

"4. If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, ..."

■ Rule 24.02(d)2 provides that "the court may accept or reject the agreement." Rule 24.02(d)4 provides that if the court rejects the plea agreement the court shall, on the record, inform the parties of that fact and afford the defendant an opportunity to withdraw his plea. Here the court rejected the agreement and informed the defendant in open court of the rejection. The case proceeded to trial on a plea of not guilty. Nothing in Rule 24.02 required the court to inform the defendant of its reason for rejecting the plea agreement.

Defendant cites no case holding that the trial court had a duty to accept the plea agreement. Defendant cites no case holding that a court may accept a plea agreement after the state has withdrawn from such an agreement.

■ Rule 11(e) of the Federal Rules of Criminal Procedure, dealing with plea agreement procedure, is the counterpart to Rule 24.02(d). With minor differences not material here, the two rules are essentially the same. Under the federal rule, a defendant has no right to have a plea bargain accepted, *United States v. Carrigan*, 778 F.2d 1454, 1465 (10th Cir.1985), "the district court is under no duty to approve a negotiated plea agreement," *United States v. Randahl*, 712 F.2d 1274, 1275 (8th Cir. 1983), and "a district court is under no duty to consider a negotiated plea agreement." *United States v. Moore*, 637 F.2d 1194, 1196 (8th Cir.1981); *United States v. Petty*, 600 F.2d 713, 713–714 (8th Cir.1979).

In *United States v. Severino*, 800 F.2d 42, 45 (2d Cir.1986), the court said:

"While Rule 11(e)(2) expressly provides that if a plea agreement calls for the government to move for dismissal of other charges, 'the court may accept or reject the agreement,' Rule 11 does not

purport to establish criteria for the acceptance or rejection of a plea agreement. 'Such a decision is left to the discretion of the individual trial judge.' Advisory Committee Note to Fed.R. Crim.P. 11. *See* H.R.Rep. No. 247, 94th Cong., 1st Sess. 6, *reprinted in* 1975 U.S.Code Cong. & Ad.News 674, 678 ('The procedure is not mandatory; a court is free not to permit the parties to present plea agreements to it,'); *United States v. Bean,* 564 F.2d 700, 702 (5th Cir.1977) ('The drafters of the Rule intended for the judge to retain discretion in accepting plea bargains.')."

Speaking of the plea agreement procedure contained in Federal Rule 11(e), a distinguished authority has said:

"It is important to note immediately what Rule 11(e) does not do. It does not make plea bargaining mandatory. It is obvious that no defendant can be obliged to enter into plea negotiations. It is less obvious, but quite firmly settled, that the prosecutor cannot be required to enter into negotiations of this kind. Defendant has no constitutional right to have the prosecutor bargain.

Finally, although the text of the rule might not suggest this, the legislative history makes it clear that each judge is free to decide for himself whether, and to what degree, he will entertain plea bargains. Proposed Rule 11(e) had been criticized by some federal judges who read it to mean that consideration of plea agreements was mandatory. To allay these fears, the report of the House Judiciary Committee stated:

Rule 11(e) as proposed permits each federal court to decide for itself the extent to which it will permit plea negotiations to be carried on within its own jurisdiction. No court is compelled to permit any plea negotiations at all. Proposed Rule 11(e) regulates plea negotiations and agreement if, and to the extent that, the court permits such negotiations and agreements.

The courts quite properly have regarded this legislative history as an authoritative gloss on Rule 11(e). They have held that the rule does not require any judge to permit plea negotiations nor to allow any form of plea agreement to be presented to him."

Wright, Federal Practice and Procedure: Criminal 2d § 175.1.

Defendant's attempt to challenge, on constitutional grounds, the trial court's rejection of the alleged plea bargain has no merit. "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution." *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984). In the case at bar there was no guilty plea. "Neither is the question whether the prosecutor was negligent · or otherwise culpable in first making and then withdrawing his offer relevant. The Due Process Clause is not a code of ethics for prosecutors; its concern is with the manner in which persons are deprived of their liberty." *Id.* 104 S.Ct. at 2548.

■ The record falls short of showing that a plea agreement reached by the prosecutor and the defense was presented to the trial court for approval or rejection. The prosecutor had withdrawn from it. Even absent that withdrawal, the trial court was under no duty to accept it and had the power to reject it. The trial court had no duty to state upon the record the reason for its rejection.

Defendant has not shown that the trial court violated, or failed to comply with, Rule 24.02(d). Defendant's first point has no merit.

Defendant's second point is that the trial court erred in denying defendant's challenges for cause directed to veniremen Leek and Hermann. The ground for each challenge was that the wife of the venireman was employed by the Division of Family Services. A few days following the offense on trial, the victim was placed under the supervision of the Division of Family

Services, and some of the state's witnesses were employees of the division.

■ On voir dire examination, neither Leek nor Hermann raised his hand when asked these questions by the prosecutor: "Would any of you be affected by the fact that you have a relative that works for the Division of Family Services? Would you be likely to give more weight or less weight to the testimony of a division worker? If you would be affected, would you raise your hand?"

Under questioning by defense counsel, Leek stated that he would presume that the defendant was innocent, that he could be fair in this case and that he had no preconceived notions about what Family Services is supposed to do or not to do.

Under questioning by defense counsel, Hermann stated that he did not think he had to believe Family Services witnesses more than others and that he did not think they are infallible.

"A trial court has wide discretion in determining the qualifications of members of the venire, and on appeal the court will not disturb the trial court's ruling on a challenge for cause absent a clear abuse of discretion and a real probability of injury to the complaining party." *State v. Walton,* 796 S.W.2d 374, 377[7–8] (Mo. banc 1990).

In *State v. Hall,* 612 S.W.2d 782 (Mo. 1981), the court held that a venire person was not automatically disqualified from serving as a juror in a criminal case because she had been formerly employed by the police department and her husband was presently so employed. Other cases hold that the wife of a police officer is not, merely because of that relationship, disqualified to sit as a juror. *State v. Watson,* 588 S.W.2d 20, 23 (Mo.App.1979); *State v. Pride,* 567 S.W.2d 426, 433 (Mo. App.1978).

This court holds, with respect to both veniremen Leek and Hermann, that the fact that each had a spouse employed by the Division of Family Services did not, standing alone, serve to disqualify him as a juror in this case. Nothing in the voir dire examination of either of those two venire-

men shows any other basis for disturbing the trial court's ruling. Defendant's second point has no merit.

Defendant's third point is that the trial court erred in denying defendant's motions for mistrial based on separate incidents arising during the testimony of state's witness Earnest Nikolaison. The witness was a social services worker, employed by Crawford County Family Services. His duties included hot line investigations, home studies and protective services. On direct examination he testified that on March 8, 1987, because of a hot line call, he and deputy sheriff Ray Plank went to the home of Dee Dee Halbert in Steelville at approximately 2:00 a.m. Dee Dee is the older sister of Michelle.

Nikolaison testified that he spoke with Michelle and asked her to make a statement. The following then occurred:

Q. (By the prosecutor) And what was that allegation?

A. The allegation was that her father, Ben DeClue, had had sexual relationship with her, ongoing for a long time. The most recent time was a few days before.

At that point defense counsel stated to the court "This is not responsive to the question. May I approach the bench?" At the bench, defense counsel moved for a mistrial because "counsel has interjected into evidence in this case evidence of other so-called crimes or criminal activities." The court denied the motion and the proceedings resumed before the jury. The following then occurred:

Q. (By the prosecutor) Did Michelle indicate to you when the incident had occurred between herself and her father?

A. Yes. She indicated the most recent incident was March 2nd.

Defense counsel again requested and received permission to approach the bench and then stated:

"Judge, this witness has indicated that the most recent time, indicating that there are other times. I think for that reason I would, again, move for a mistrial. I think the question, or the answer was not responsive to the question. It

would lead to other indications for which this defendant is not charged or put on trial."

The court again overruled the motion for new trial.

During cross-examination of Nikolaison the following occurred:

Q. (By defense counsel) Mr. Nikolaison, did you talk with Michelle DeClue?

A. Yes, I did.

Q. Did she tell you at the time that this alleged rape occurred on March the 3rd of 1987—

A. March the 2nd, I believe it was.

Q. Did she say March the 2nd?

A. I believe that's what she told me, yes.

Q. All right, because the charge is March the 3rd, so she told you March the 2nd?

A. That's—

Q. Well, tell us what she said. We want to know.

A. She told me March the 2nd.

Q. All right.

A. But she also told me of several other incidents also.

Q. Would you mind answering my questions?

A. Yes, sir.

Q. Did she tell you March the 2nd?

A. She told me that one date.

Q. May we approach the bench, Judge?

At the ensuing conference at the bench, defense counsel asserted that the witness "has answered questions that were not asked him," but did not specifically request a mistrial. The court apparently construed defense counsel's remarks as constituting a request for mistrial and denied the request.

Although defendant's point complains that the witness was permitted to "volunteer and interject hearsay evidence of other crimes into the case," in the trial court defense counsel made no objection on the ground of hearsay. The objection which was made was that the testimony constituted evidence of other crimes.

[5] The hearsay ground, advanced for the first time in this court, has not been preserved for appellate review. *State v. Thomas*, 452 S.W.2d 160, 164[10] (Mo. 1970); *State v. Brookshire*, 353 S.W.2d 681, 688[17] (Mo.1962); *State v. Nachtigal*, 562 S.W.2d 779, 781[1] (Mo.App.1978).

■ So far as the other ground, evidence of other crimes, is concerned, that ground was not a valid one. In *State v. Akers*, 328 S.W.2d 31, 33–34 (Mo.1959), the court, citing several Missouri cases, said:

"While proof of other distinct crimes is not ordinarily admissible, it is proper in a prosecution for incest to admit evidence of other acts of sexual intercourse committed by the defendant and the prosecutrix prior to the act upon which the prosecution is based 'as well also as any acts of "lascivious familiarity between the parties, not amounting to actual intercourse, * * * since such evidence is of such a character as tends to make it probable that the parties did commit the specific offense charged. They constitute the foundation for an antecedent probability."

See also *State v. Taylor*, 735 S.W.2d 412, 417–418 (Mo.App.1987). See, generally, 77 A.L.R.2d 841 (Evidence—similar sexual offense), l.c. 878, § 27 (previous acts of incest with prosecutrix). Defendant's third point has no merit.

Defendant's fourth point is that the trial court erred in receiving into evidence testimony of state's witness Joann Bayless concerning an incident which occurred in June 1988, involving defendant and Michelle. Bayless, a social service worker employed by the Division of Family Services, was in charge of supervising the placement of Michelle and her twin sister Melissa in foster care. Bayless was also present when defendant and his wife were permitted to visit Michelle.

■ The challenged evidence was introduced during the course of the prosecutor's direct examination of Bayless. The prosecutor asked the witness whether, during the visits, "there had been any action or any conduct that you have had to bring to the attention of either the defendant or Michelle...." After colloquy between

counsel and the court, the following occurred:

Q. (By the prosecutor) Mrs. Bayless, if you would, without telling us what anybody else said, tell the jury what you observed.

A. Yes. In, I think it was June of 1988, during the visit Mr. DeClue bit Michelle on the side of the breast. That was one incident.

Q. And you observed that?

A. Yes, I did.

Q. What action, if any, did you take?

A. We concluded the visit, which it was at the end of the visit, and that afternoon I sat down and I wrote Mr. DeClue a letter.

Q. Was that letter subsequently mailed to Mr. DeClue?

A. Yes, it was.

Q. (By defense counsel) Your Honor, may we approach the bench?

(The Court) Yes.

At the bench, defense counsel moved for a mistrial because "counsel has consciously interjected into this case issues that have no bearing or relevance on the lawsuit or evidence of other crimes or criminal activity." The objection was overruled.

It will be observed that the evidence concerning the biting incident was introduced without timely objection and without a motion to strike. Moreover, in a prosecution for incest, evidence of "any acts of lascivious familiarity between the parties, not amounting to actual intercourse," is admissible, because "such evidence is of such a character as tends to make it probable that the parties did commit the specific offense charged." *State v. Akers, supra,* at 33–34.

Moreover, "the fact, standing alone, that the challenged evidence was of a crime committed after, rather than before, the crime on trial does not necessarily make that evidence incompetent." *State v. Morton,* 684 S.W.2d 601, 610[15] (Mo.App. 1985). See also, *State v. Shaw,* 636 S.W.2d 667, 672[7] (Mo. banc 1982). 2 Wigmore, Evid. § 398 (Chad.Rev.1979).

The fact that the breast biting incident took place more than one year after the charged offense does not impair its admis-sibility. Any issue of remoteness in time would go only to its weight. *State v. Simerly,* 463 S.W.2d 846, 848[2] (Mo.1971).

Other states support the view that in a prosecution for a sexual offense committed on a child, evidence of subsequent sexual misconduct involving the defendant and the victim is admissible. *People v. Koller,* 142 Cal. 621, 76 P. 500, 501–502[2] (1904); *People v. Mason,* 301 Ill. 370, 133 N.E. 767, 770[4] (1921); *State v. Munz,* 355 N.W.2d 576, 580–581 (Iowa 1984); *State v. Austin,* 285 N.C. 364, 204 S.E.2d 675, 677[3] (1974); *State v. Reineke,* 89 Ohio St. 390, 106 N.E. 52, 53–54 (1914); *Johnston v. State,* 418 S.W.2d 522, 528[12] (Tex.Cr.App.1967).

There is an independent reason why evidence of the breast biting incident was admissible. Even if that conduct was not the product of sexual passion, it was admissible as an attempt on the part of the defendant to intimidate the victim and thus tends to indicate a consciousness of guilt. *State v. Corlew,* 463 S.W.2d 836, 839–840[5] (Mo.1971); *State v. Easter,* 657 S.W.2d 52, 53[3] (Mo.App.1983); *State v. Ball,* 562 S.W.2d 136, 137[2] (Mo.App.1978); 22A C.J.S. Criminal Law § 748, p. 398.

This court holds that the challenged evidence was admissible. Defendant's fourth point has no merit.

■ Defendant's fifth point is that the trial court erred in limiting to three the number of character witnesses which the defense could call. The defense did call three character witnesses, and each of them testified in general that the defendant had a good reputation for honesty, truthfulness, veracity and good moral character. The state did not produce any witnesses to rebut that evidence. When the court indicated to defense counsel that he would be limited to three character witnesses, counsel made no objection and, at least tacitly, agreed. The defense made no offer of proof with respect to the testimony of any other character witnesses. On this record, there is no showing that the trial court abused its discretion. *State v. Demaree,* 362 S.W.2d 500, 505–506[10] (Mo. banc 1962); *State v. Johnson,* 721 S.W.2d 23, 25–27[2] (Mo.App.1986). Defendant's fifth point has no merit.

Defendant's sixth point is that the trial court erred in failing to disqualify himself because he "was clearly prejudiced against this defendant." In support of this argument, defendant points to several rulings of the trial court but makes no showing that any of the rulings was erroneous.

The mere fact that a trial judge has previously made adverse rulings against a party or had previous contact with the defendant in criminal matters does not establish prejudice. *State v. Owens,* 759 S.W.2d 73, 75[3] (Mo.App.1988). Although an application for a change of judge not timely filed may be properly denied on that basis by the trial court, if the judge is in fact prejudiced, it is error for him not to recuse himself even if the request is not timely made. *Id.* at 74[1, 2]. Not only does this record fail to demonstrate any prejudice on behalf of the trial judge, it discloses that he exercised admirable restraint in dealing with some of the trial happenings. Defendant's sixth point has no merit.

The judgment is affirmed.

PARRISH and SHRUM, JJ., concur.